Otto Hexom, Appellant, v. The Knights of Maccabees of the World, Appellees.

**Assessment Insurance:** FORFEITURE: WAIVER. Waiver is the relinquishment of a known right, or such conduct as warrants an inference of such relinquishment, and where conduct is relied upon it must appear that the party claiming the benefit of the waiver was induced to do or omit that which he would not have done or omitted; as where an insured voluntarily engaged in an occupation prohibited by the association, knowing that by so doing his policy would be rendered void, he could not rely on the fact that the local officer of the assessment association thereafter accepted assessments from him, whose duty it was

to enter a suspension against him and report the same to the association, since his act in so doing was outside of his authority and amounted to a fraud; especially as under the circumstances shown the insured participated in the fraud.

Same: ESTOPPEL.  A principal is not estopped by the fraudulent act of his agent when the fraud is known to or participated in by the other party.  Evidence held to show that an insured knew and participated in the fraud practiced by the local collector of an assessment association, in receiving and remitting assessments of a member known to have forfeited his insurance by a change of occupation.

Same: WAIVER.  The forfeiture of an insurance certificate because of change in occupation is not waived by objecting to the claim, where presented only on the ground that when he became a member he was in a prohibited business, the association not knowing at the time of the change in occupation.

*Appeal from Winneshiek District Court.*—HON. L. E. FELLOWS, Judge.

TUESDAY, JULY 7, 1908.

REHEARING DENIED THURSDAY, OCTOBER 29, 1908.

ACTION in equity to compel defendant, a fraternal beneficiary association, to levy, collect, and pay over a benefit assessment.  Plaintiff was denied the relief prayed, and he appeals.  *Affirmed.*

*E. W. Cutting,* for appellant.

*D. D. Aitken* and *Hurd, Lenahan & Kiesel,* for appellee.

BISHOP, J.—In December, 1904, Paul C. Hexom became a member of the defendant association, and there was issued to him, by the Supreme Tent, so-called, of the association, a certificate of membership, or policy, which

provided, among other things, that at his death "one monthly rate on each life benefit member, not exceeding in amount the sum of one thousand dollars will be paid as a benefit to Otto Hexom, bearing relationship to him of brother, . . . provided he shall have in every particular complied with the laws of said Supreme Tent now in force, or that may hereafter be adopted," etc. On January 31, 1906, said Paul C. Hexom died, and, the claim of plaintiff as his beneficiary having been rejected by the defendant association, this action was brought. As matter relied upon to defeat a recovery, there is pleaded by defendant certain of the laws of the association, in force at all times, as follows:

Sec. 281. The following persons shall not be admitted to the association: . . . Persons engaged as principal, agent or servant in the manufacture or sale of spirituous, vinous or malt liquors as a beverage.

Sec. 282. Any member who engages in a prohibited occupation shall thereby forfeit all rights as a life benefit member of this association, and this certificate shall thereby become absolutely null and void, without action on the part of his tent or of the association, or of any of the officers thereof, etc.

Sec. 408. No benefit shall be paid on account of the death or disability of a member while engaged in any prohibited occupation.

Sec. 243. The record keeper shall be the Secretary and Treasurer of the Tent, and it shall be his duty: . . . (3) To receive from all members the money paid on all monthly rates (due the first day of each month), etc.

Sec. 248. The record keeper shall not receive any monthly rate, etc., from any member who engages in a prohibited occupation, but shall enter the suspension of such member on the records of the tent, and report the same to the Supreme Record Keeper, giving the date and cause thereof.

The answer charges that said Paul C. Hexom on or

about July 1, 1905, became engaged in the business of sell-, ing intoxicating liquors as a beverage, and so continued to be engaged up to the time of his death; that by reason thereof, he, said Hexom, did not remain a member of the association until the date of his death, but his certificate became and was and still is void and of no effect. In the reply filed, plaintiff does not put in issue the allegations of the answer, nor does he question the sufficiency thereof as stating a defense—complete on its face—to his action. On the contrary, he seeks to avoid the effect thereof by pleading matters in estoppel. First, it is alleged that on June 26, 1905, said Hexom paid to the proper officers of the local tent of which he was a member the sum of $7.80 as full payment in advance for all dues, assessments, and monthly rates due and to become due for the period from July 1, 1905, to February 1, 1906; that said officer, as agent for the association, retained said money, and in making his monthly remittances to the Supreme Tent included therein for each and every month of said period the sum prescribed by the laws of the association as the monthly rate and assessment due to be paid by said Hexom, and that this was done with full knowledge, on the part of said officer, of the business in which said Hexom was engaged; that the defendant received and retained the dues, rates, etc., so paid to it each month, and has not returned to said Hexom nor to plaintiff any part thereof. Second, it is alleged that, when the claim under the certificate in question was presented to the defendant association, its board of trustees took action thereon and resolved "that the claim does not appear to be a valid one," inasmuch as from correspondence on file it appeared that said Hexom was engaged in the saloon business at the time of his admission; whereas, in his application he gave his occupation as clerk in a clothing store. The resolution further provided that plaintiff be notified accordingly and given permission at a time fixed "to show cause why this claim should be al-

lowed, at which time by affidavit as he deems himself entitled to." And plaintiff says that at the time of said action the said board and the defendant association had full knowledge and information concerning the business of said Hexom during the period from July 1, 1905, down to his death. It is then alleged that, relying upon the said action of the board of trustees, plaintiff employed an attorney and caused to be prepared and submitted to defendant, at the time fixed, affidavits showing conclusively the correctness of the application statement. On these facts and on the failure of defendant to rely upon a forfeiture of membership because of the engagement by Hexom as a member in a prohibited business, plaintiff asserts that the forfeiture was waived, and defendant is estopped to assert the same. These are the matters of controversy which were submitted to the court below, and on this appeal we shall consider and dispose of them in the order of their statement.

I. Respecting the first, the evidence shows this state of facts: That at the time Paul C. Hexom became a member of the defendant association he was engaged in the clothing business. Early in June, 1905, he made application for a saloon license, and about the middle of that month proceeded to fit up a building or room to be used for saloon purposes. On July 1, 1905, he opened his doors and thereafter conducted a saloon business, selling intoxicating liquor, down to the time of his death. On June 26, 1905, Hexom paid in advance to one Erickson, record keeper of the local tent, the sum of $7.80, which sum was sufficient to meet all monthly payments to become due and payable to the association during the period from July 1, 1905, to February 1, 1906. Thereafter Erickson paid out of the same local tent dues $1.50, and each month remitted to the Supreme Tent the sum of $.90. At the time of such deposit made by Hexom with Erickson, the latter did not know what

*1. ASSESSMENT INSURANCE: forfeiture: waiver.*

business the former was engaged in, but later did know of the opening of the saloon, and knew that Hexom was thereafter continuously engaged in conducting the same. Quoting from a stipulation of facts, this appears: "That at one time before becoming engaged in the business of selling intoxicating liquors, said Hexom asked said Erickson that, in case he should go into the saloon business if that would hurt his policy, and that in reply Erickson told him yes, it would, that if he did his policy would be void; and that at another time, after Hexom started in the saloon business, Erickson told him he had better drop out while at that work, and that in reply Hexom told Erickson he did not know how long he would be in it, that he might be in the business only a short time, and when he quit he would go right on again. He said he knew that while in the business his policy was void." Erickson did not enter the suspension of Hexom on the records of the local tent, nor did he advise the Supreme Tent officers of the change of occupation.

We are agreed that on the case thus made the court correctly ruled against the contention for waiver. A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of such relinquishment, and, where conduct is relied upon to constitute waiver, it must appear that the insured was induced by the association to do or omit some act which he would not otherwise have done or omitted. 3 Am. & Eng. Ency. 1089, note. It is not the intention of the insurer, but the effect upon the insured, which gives vitality to the estoppel. May on Insurance, section 507. All of our cases proceed on this theory. *Bailey v. Association,* 71 Iowa, 689; *Tobin v. Society,* 72 Iowa, 261; *Moore v. Conductors,* 90 Iowa, 721; *Trotter v. Grand Lodge,* 132 Iowa, 513. In the case before us there is no contention—and there could not well be in view of the fact stipulation in the record—that Hexom engaged in the saloon business either in ignorance of the

prohibitory law of the association on the subject, or in reliance upon any custom, practice, or conduct on the part of the association, its officers or agents, whereby he was induced to believe that his rights as a member would not be jeopardized thereby.  He knew that the business in which he was about to engage was on the prohibited list, and that the penalty of engaging therein was a forfeiture of his membership, and he acted in the premises solely on his own motion and responsibility.  In this situation, and giving force to the law of the association, as we should, it is clear that the moment Hexom opened the door of his saloon for business he stood suspended from all the rights of membership in the association.  So far there is no dispute in the authorities.  *Holiday v. Association,* 103 Iowa, 178; *Mortensen v. Association,* 124 Iowa, 277; *Schmidt v. Maccabees,* 97 Wis. 528 (73 N. W. 22); *Abell v. Woodmen,* 96 Minn. 494 (105 N. W. 65); Bacon on Benefit Societies, section 325.

From this it follows that, to make out a case of waiver, plaintiff is driven to depend upon the conduct of the local record keeper, Erickson, in retaining the deposit of money in his hands, and making monthly remittances therefrom to the supreme office of the association, after it became known to him that Hexom had embarked in the saloon business.  That out of this no waiver arose we think is clear.  To begin with, every lawyer knows that a principal is not bound by any act of his agent done in excess of the authority granted to such agent.  This is the general rule, and in every case reported in the books, making a departure therefrom, it will be found that the unauthorized act was within the apparent scope of the agent's authority, and the circumstances thereof were such as to work an estoppel.  Now, here, as we have seen, the authority vested in Erickson, as record keeper, was limited to the receipt of monthly rates, assessments, etc., due from the members of the local organization in good standing, and to

forward the same to the supreme record keeper, and it was his duty to enter the suspension of all members engaging in a prohibited occupation, and make report thereof to the supreme office of the association. When therefore he accepted from Hexom, standing in suspension, monthly rates and assessments—and this, in effect, he did by appropriating from the moneys deposited with him an amount sufficient to pay such rates and assessments—he not only acted outside of the limits of his authority, but, as we think, his acts amounted to a fraud upon the association whose officer or agent he was. Under other circumstances, perhaps, this might not be conclusive of the rights of Hexom and his beneficiary; but, in view of the facts shown in the record, we think Hexom was a party to the fraud, and, this being true, there is no possible ground on which the contention for waiver can be made to rest. Whether or not as matter of fact Hexom knew that Erickson was making monthly remittances from the deposit fund to the supreme office is not disclosed by any evidence directly addressed to the point; but counsel for plaintiff say that he did know, and we think it fairly inferable from the evidence that such was the fact. If, then, the conduct of Erickson amounted not only to a breach of duty, but to fraud, and Hexom was advised thereof—and more especially if he became a party thereto—there is no theory on which he could advantage himself from the fact of the payments made, or on which his beneficiary can convert the same into a defensive shield as against a declaration and claim of forfeiture.

It is elementary that a principal cannot be estopped by the fraudulent acts of his agent, where the fraud is known to or participated in by the other party to the contract. In such cases the knowledge of the agent is not the knowledge of the principal, nor is the principal bound by the tainted transaction. *Hummel v. Bank,* 75 Iowa, 689; *Steel Co. v. County,* 126

2. SAME: estoppel.

Iowa, 606; *Van Buren County v. Surety Co.,* 137 Iowa, 490.

A simple analysis of the evidence will make clear the fraud and the participation of the insured therein. Hexom made the deposit with Erickson after he had formed his plan to engage in the saloon business. At the time, he knew of the prohibition contained in the law of the association. We say this because every member of such an association is presumed to know the laws thereof in force during the period of his membership. *Hobbs v. Association,* 82 Iowa, 107; *Fitzgerald v. Association,* 106 Iowa, 457. He made the deposit without disclosing his purpose to engage in such business, and from this it is not difficult to reach the conclusion that he expected the monthly rates, etc., to be forwarded by Erickson, notwithstanding the law of the association on the subject. Later he talked with Erickson, and, on being told that he had better drop out, he replied "he might be in the business only a short time, and when he quit he could go right on again." Here is plainly evinced a proposal that monthly remittances should be kept up by Erickson, and that the supreme officers of the association should not be advised of the change of occupation. This latter we must conclude, because confessedly it was well understood by both Hexom and Erickson that, if knowledge of the situation should reach the supreme office, the payments would be refused, and a cancellation of the certificate ordered. As a result of the conference, Hexom, knowing, as he says, that his policy was void, left his deposit money in the hands of Erickson, and the latter, knowing also that under the law the policy was no longer in force, continued to make remittances, and did not communicate to his superior officers a word respecting the altered situation. In the light of this no other conclusion can be reached than that the course pursued was mutually planned, and that what was done in fulfillment thereof was mutually assented to, and no one can doubt

but that the plan and what was done under it contemplated a fraud upon the association.

The fact, as conceded, that defendant has not yet returned, or offered to return, the money received by it, cannot avail plaintiff anything. We may agree with counsel that, upon discovering the fraud, it became defendant's duty to make return of the money; but it could only do so to the person legally entitled thereto. Plaintiff does not show that he has any right of recovery. At the time the fraud was discovered Paul C. Hexom was dead, and an offer to return could not very well be made to him, and, as far as appears, he has no legal representative to whom return, or offer to return, can lawfully be made. In this situation, defendant cannot be charged with having condoned the fraud or waived the forfeiture.

II. Coming now to the second ground of waiver contended for, it may be disposed of in brief. The argument for appellant here assumes—and it has no other basis —that defendant had full knowledge at all times of the change in Hexom's occupation.

3. SAME: waiver.

From what has been said in the preceding division of this opinion, it follows that the assumption is not warranted. The defendant did not become bound by the knowledge of its agent acting in fraud of its rights. Conceding for the moment that a waiver might arise out of matter such as here plaintiff relies upon, still, as the case stands, the proof shows that defendant did not know of the change in occupation at the time when affidavits were called for respecting Hexom's occupation as of the date when he made his application for admission to membership, and, as it did not then know, it cannot be held to be a waiver. All the books agree that knowledge of a right is essential to a waiver thereof.

The conclusion expressed must lead to an approval of the judgment. *Affirmed.*