KATE FAHEY, Appellant, v. ANCIENT ORDER OF UNITED WORKMEN, Appellee.

WITNESSES:   Cross-Examination—Limitation.   A witness who has denied that an insured had made applications for reinstatement may testify, on cross-examination, whether signatures to purported applications were in the handwriting of the insured.

DISCOVERY:   Default in Answering Interrogatories.   The assumption that a pleaded avoidance stands established because of a failure to answer interrogatories attached to a reply does not prevail until the court has fixed the time for such answering and defendant has defaulted.   (Sec. 3610, Code, 1897.)

INSURANCE:   Waiver of Prompt Payment and Reinstatement Provisions.   An insurer may not insist that the insured stands suspended and deprived of all rights under the policy because of default in prompt payment of assessments and failure to observe the requirements for reinstatement, when its conduct has been such as to reasonably lead the insured, or those acting in his behalf, to omit to make such prompt payment, or to observe such requirements.   Evidence held to present jury question on the issue of waiver.

INSURANCE:   By-Law Provisions Prohibiting Waivers.   The repeated acceptance of belated payments, and the frequent failure to insist on requirements governing reinstatement, may work a waiver of prompt payment and requirements for reinstatement, even though the by-laws solemnly declare that no act of a grand or subordinate lodge official shall work such waiver.

INSURANCE:   Reinstatement—Offer to Pay Overdue Assessment.   A suspension resulting from failure to pay an assessment when due is avoided, and insured is reinstated, by a mere "offer," in good faith and within a reasonable time, to pay the overdue premium, in those cases where the insurer has,

by its conduct, waived prompt payment and compliance with provisions governing formal reinstatement.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

NOVEMBER 15, 1919.

ACTION on a certificate of membership issued to Michael Fahey by the defendant, stipulating the payment of $2,000 upon his death, if in good standing, resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.—*Reversed.*

*T. P. Cleary* and *C. R. Jones,* for appellant.

*E. B. Evans* and *Hess & Hess,* for appellee.

LADD, C. J.—Michael Fahey became a member of the Ancient Order of United Workmen, October 24, 1892, but, for some reason not important now, the certificate sued on was not issued until June 10, 1915. This certificate named his wife, Kate Fahey, his beneficiary. He died January 7, 1917, and in this action she seeks to recover the indemnity stipulated in the certificate. The insurer pleaded as a defense that the insured had not paid the assessment of January, 1916, and therefore was not in good standing at the time of his death. Plaintiff pleaded waiver of prompt payment, and compliance with the requirements for reinstatement, and a tender of payment and refusal of the assessment mentioned.

I. The beneficiary testified that she had looked after the payment of assessments and dues for many years prior to her husband's death, and identified receipts showing that the December, 1914, assessment was not paid until January 16, 1915; that the assessment of July, 1915, was not paid until August 27th of that year; and that the

1. WITNESSES: cross-examination: limitation.

assessments of September, October, and November, 1915, were not paid until December 20th of that year; and further, that these and all other payments were received without applications reciting the health condition of the insured, as required by the by-laws for reinstatement. There was no error in allowing the witness to testify, over objection, on cross-examination, as to whether certain signatures to what purported to be such applications were in the handwriting of the insured, for such testimony bore on her denial that applications by the insured had been presented to the local financier.

II.   The reply was filed March 11, 1918, and to it were annexed ten interrogatories, to be answered by the defendant. The time within which answers were to be made was not fixed by the court. The trial began

2. DISCOVERY: default in answering interrogatories.

fourteen days later, and, at the close of the evidence adduced by plaintiff, an affidavit, such as is contemplated by Section 3610 of the Code, was filed, and the plaintiff then moved for judgment. Shortly thereafter, on the same day, the defendant filed answers to the interrogatories. The motion was overruled. Section 3604 of the Code authorizes interrogatories to be annexed to the petition, answer, or reply. Code Section 3606 exacts that:

"The interrogatories shall be answered at the same time the pleading to which they are annexed is answered or replied to, unless they are excepted to by the adverse party, in which event the court shall determine as to the propriety of the interrogatories propounded, and which of them shall be answered, and within what time such answer shall be made."

No pleading in response to a reply is required, and the time in which to answer interrogatories annexed thereto is not specified by statute. An order of court prescribing a reasonable time in which this shall be done is essential, be-

fore resort to the remedy provided by Section 3610 of the Code is available. Until such an order is entered, and there has been a failure to answer within the time fixed by the court, the claim or defense or part thereof may not "be deemed to be sustained," under Section 3610 of the Code. *Hogaboom v. Price,* 53 Iowa 703; *Garvin v. Cannon,* 53 Iowa 716; *Free v. Western Union Tel. Co.,* 135 Iowa 69. There was no error in overruling the motion.

III. The answer pleaded that the insured had "failed to pay the assessment legally due and payable during the month of January, 1916, and as a result of such failure to pay, became suspended from the rights and benefits of said certificate," and that he had never been reinstated, and, for this reason, was not in good standing at the time of his death. The plaintiff replied, admitting the omission to pay the assessment of January, 1916, but alleged that payment thereof had been tendered prior to February 15, 1916, and refused, and further, that all requirements for reinstatement, save that of payment, had been waived. Section 42 of the by-laws provides that:

**3. INSURANCE: waiver of prompt payment and reinstatement provisions.**

"Any member failing to pay an assessment due from him on or before the last day of the month in which same is due shall forfeit all rights, privileges, and benefits under their certificate. No action of any grand or subordinate lodge officer shall be deemed to waive such forfeiture."

The consequence of omission to pay is declared in Section 136:

"Any member failing to pay his or her assessment on or before the last day of the month when the same is due shall, because of such failure to pay, and without any action by his or her lodge or any officer thereof, stand suspended; and no act or statement of any officer of the subordinate lodge or of the Grand Lodge shall be deemed to

constitute a waiver of such suspension, nor shall it estop the Grand Lodge from relying upon such suspension."

Three methods are provided for reinstatement: (1) By filing application therefor with the local financier within 30 days, by payment of the delinquent assessment and dues, and by presenting a statement signed by the insured, certifying that he is then in good health; (2) by filing application after 30 days, and within 90 days, with the same showing, but the financier then appoints three members of the local lodge to investigate and report, and a majority vote of the lodge is required to reinstate; and (3) by filing application after 90 days and within 6 months, accompanied by a medical examination, which must be approved by the Grand Medical Examiner, and by paying to the financier one assessment. Only upon a majority vote of the local lodge is the member reinstated. Under these provisions, then, the insured became suspended, upon failure to pay the assessment of January, 1916, on or before the last day of that month, and the main issues to be determined are: (1) Whether the defendant, by its course of dealing with the insured, had waived compliance with the several sections relating to reinstatement after suspension; and (2) whether, if so, the beneficiary, in his behalf, tendered payment within such time as to take advantage of such waiver, and kept same good.

The evidence disclosed that the insured had been suspended sixteen times since 1896, because of his omission to pay the assessments within the time required, and had been reinstated fifteen times, five of the suspensions having occurred since January, 1912. Plaintiff was asked if, at any time during the year 1915, she had furnished any medical statement concerning her husband's health, and answered in the negative.

"Q. Was any ever requested by this defendant? A. No, sir."

It also appears that the assessment of December, 1914, was not paid until January 16, 1915. The plaintiff testified to having paid this assessment to the financier of the local lodge personally. The receipt bears that date. The financier swore that he had loaned the insured money to pay the assessment in December, 1914, on his promise to bring it back during the next month,—that is, in January, 1915; and that the date of the receipt was when the money borrowed was returned. The jury might have relied upon the beneficiary's statement, rather than that of the financier, and have found that the assessment was paid on the date the receipt bears, and if so, this written application must have been waived. Again, she testified to having paid the assessments of July and August, 1915, on August 27th, and the receipt bears that date. The financier produced what purported to be an application by the insured, bearing the same date, and swore that it was presented to him prior thereto. She testified, however, that the signature attached to the application was not in the handwriting of the insured, and her testimony was corroborated by that of her son, and by the opinion of an expert on handwriting. The testimony of the financier tended to show otherwise, but the jury might have found that the application was not that of the insured. The plaintiff further testified that she paid the financier the assessments and dues for the months of September, October, November, and December, amounting to $16.65, on December 20, 1918. The failure to pay the September assessment within that month, of course, worked a suspension, and it will be noted that the payment was not made within 30 days; and yet there is no pretense that a committee of three was appointed to investigate and report, or a vote of the lodge taken, as exacted by the by-laws. The financier, however, does claim that a written application, with health statement by the insured, had been received by mail and filed December 20, 1915. The postmark on

the envelope in which this application is said to have come bears date December 27, 1915, or 7 days after the financier swore it was received. The date of a letter from the insured, which was enclosed, corresponds with the postmark on the envelope. From these circumstances, the jury might have concluded that payment of these assessments was received long before the application had been mailed to the financier, and that, in any event, the matter of suspension was not submitted to the vote of the members of the local lodge, as exacted by Section 141 of the by-laws. There was no showing by the defendant that any applications were made for reinstatement in the year 1912 or 1914, though plaintiff's evidence warranted a finding to the contrary. What happened prior to that time is not disclosed. It seems hardly necessary to say that this course of dealing might well have led the insured, or the beneficiary, acting in his behalf, to believe that the payment of assessments was not required by the association within the time specified in the by-laws, but that it would accept the same, if paid within a reasonable time thereafter, and reinstate the suspended member without formal written application therefor,—or, in other words, would continue the insurance if payment were made within a reasonable time after due; and that the plaintiff was warranted by the company's method of doing business in so believing. The intention of the insurer is not controlling. The effect of its conduct on the mind of the insured is vital. *Hexom v. Knights of the Maccabees of the World,* 140 Iowa 41. A waiver is the intentional reliquishment of a known right, or such conduct as warrants an inference of such relinquishment; and, where conduct is relied upon to constitute a waiver, it must appear that the insured was induced by the association to do or omit some act which he would not otherwise have done or omitted. The financier testified that he made monthly reports and remittances to the proper officer of the

Grand Lodge. Though an officer of the subordinate lodge, he was, in collecting and remitting assessments and dues levied for the maintenance of the association, its agent, and it is to be assumed to have been advised of what he did in the discharge of his duties. *Trotter v. Grand Lodge,* 132 Iowa 513; *Davidson v. Temple of the Supreme Tribe,* 135 Iowa 88; *Wood v. Iowa Legion of Honor,* 133 Iowa 33; *Conkling v. Knights & Ladies of Security,* 183 Iowa 665.

Counsel for appellee suggests that this conclusion is obviated by a clause in sections of the by-laws relating to reinstatement, saying that "no act or statement of any officer of the subordinate lodge or of the Grand Lodge shall be deemed, or constitute a waiver of such suspension." But this does not prohibit a waiver by the Grand nor by the subordinate lodge, which also is an agent of the Grand Lodge. The local financier testified to reporting to the Grand Lodge two or three weeks after collecting assessments and dues, and to remitting these to it. The Grand Lodge, then, must have been advised since 1912 of the fact, if such it be, that the financier was accepting payments of assessments after the time limit specified in the by-laws, without application stating condition of health, and interposed no objection. There is no pretense that it interfered in any way to restrict the financier in his method of transacting the business, and the finding was open to the jury that the requirement of an application reciting the suspended member's condition precedent to reinstatement had been waived by the Grand Lodge. *Schlosser v. Grand Lodge of Bro. of R. Trainmen,* 94 Md. 362 (50 Atl. 1048). This view is strengthened by the circumstance that the collection of assessments and dues and the reinstatement of members were left largely to the financier and the subordinate lodge. Even the notices of assessments were sent out by the financier; and the Grand Lodge, in receiving the

*4. INSURANCE: by-law provisions prohibiting waivers.*

assessments and dues from the financier, without objection to any irregularities in their collection or the mode of re-instatement pursued, manifestly waived strict compliance with the rules laid down in the by-laws. As stated, the assessment for January, 1916, was not paid; but the plaintiff testified that, prior to February 15, 1916, she saw the local financier at his office, and told him she wished to pay the assessment for that month, and that he responded by saying "he would not accept it, because there was another assessment soon due. He told me he would want the other assessment and this one paid together. I asked him if he would not take the $5.10 and give me a receipt, and he said no, because I didn't want to pay for the two. I asked him how he knew there was another assessment due, when I was not notified of it, and he said that that would be their business." The financier could not recall any conversation and denied having ever refused to receive such payment. But the jury might have found that he did refuse to receive it. Nothing was then due except the assessment and fees, amounting to $5.10; and, as the financier refused payment, as might have been found, it would have been idle to have actually offered the money. What was done, if the plaintiff's testimony is to be believed, was equivalent to payment, and that was all that she could then do in compliance with the requirements of the association. As presenting an application for reinstatement had been waived, as the jury might have found, the insured must be regarded as having been reinstated as a member of the association in good standing. The financier having refused payment of the January, 1916, assessment, nothing further was required of her until notified by the company that it would accept the assessment and dues owed to it. As the financier had refused payment, surely it would have been idle for the beneficiary representing the assured to

5. INSURANCE: reinstatement: offer to pay overdue assessment.

tender the money subsequently due, until informed that it would be received. In other words, she was not required to do a vain and useless act by actually offering the money after the financier had refused to receive it, and, until she was notified otherwise, she was not called upon to pay or offer to pay the assessments and dues then or subsequently levied. *Byram v. Sovereign Camp W. of W.*, 108 Iowa 430; *Supreme Council of the Order of Chosen Friends v. Bailey*, 21 Ky. L. Rep. 1627 (55 S. W. 888); *Wagner v. Supreme Lodge Knights & Ladies of Honor*, 128 Mich. 660 (87 N. W. 903); *Grand Lodge A. O. U. W. v. Scott*, (Neb.) 97 N. W. 637; *Supreme Lodge Knights of Honor v. Davis*, 26 Colo. 252 (58 Pac. 595).

One of the reasons said to have been given by the financier was that "there was another assessment due." This was untrue. Another reason was that he would "want the other assessment and this one paid together." Conceding that he may have so desired, he was not entitled to payment then of any assessment subsequently to be levied, and the same may be said of his refusal because she did not want to pay two assessments. What is claimed to have been said, if said, amounted to an absolute refusal of payment; and, the filing of application for reinstatement having been waived, the insured must be found to have been reinstated, and the beneficiary awarded recovery of the indemnity stipulated. Even though subsequently informed that the association would receive the money tendered, the insured or beneficiary would be entitled to a reasonable time within which to pay, and in no event would incur a second suspension or the necessity of a second reinstatement. The by-laws do not cover such a contingency. The cause should have been submitted to the jury. In ruling otherwise, the court erred.—*Reversed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.