MAUDE L. CLARK, Appellee, v. SUPREME COUNCIL ROYAL ARCANUM, Appellant.

**INSURANCE:** Life Insurance—Prompt Payment of Dues—Waiver. The contract right of an insurer to demand prompt payment of dues and to avail himself of an automatic suspension of the insured in case such payment is not made, is waived by habitually accepting such

dues after the insured has become delinquent in making payment. (See Book of Anno., Vol. 1, Sec. 8784, Anno. 9 *et seq.*)

Headnote 1:   32 C. J. p. 1348.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

## OCTOBER 20, 1925.

ACTION upon a Royal Arcanum benefit certificate dated February 13, 1911, upon the life of George Curtis Clark, payable to his wife, the plaintiff, Maude L. Clark. The case was submitted to a jury, which returned a verdict for plaintiff. Judgment was entered upon the verdict, and the defendant appeals.—*Affirmed.*

*Weaver & Giller* and *Kimball, Peterson, Smith & Peterson,* for appellant.

*J. A. Williams* and *Rosewater, Mecham & Burton,* for appellee.

MORLING, J.—The assured received injuries on November 15, 1921, from which he died November 28, 1921. The defense is that the October, 1921, assessment of $1.35 was not paid during that month, as required by the laws of the order, and that the policy was in suspense at the time of the death of the assured.

The plaintiff's claim is that, by course of business, the monthly assessment was frequently delinquent, and was paid and accepted after maturity, and assured still treated as a member in good standing, and 'that thereby the members of his family were led to believe that defendant would never require a strict and literal compliance with the contract; and that defendant is estopped from now asserting a forfeiture.

Only the one issue of waiver was submitted to the jury. The principal question is whether the court was justified in submitting it.

The October, 1921, dues of $1.35 were not paid or tendered

until November 15, 1921; and, as the record stands here, the policy was in suspense, as claimed by defendant, unless there was an estoppel or waiver.

The evidence as to frequent or habitual delinquencies is somewhat vague, and must be interpreted in the light of the proceedings at the trial and the theory on which the case was tried.

A brother, S. R. Clark, attended to the payment of dues. It would seem that, after November, 1912, the deceased and the plaintiff ceased to live at Cedar Rapids, Nebraska, where the defendant's lodge of which deceased was a member was located. S. R. Clark testified to receiving letters from the collector of the local lodge from 1906 to 1909, requesting payment of dues,— mostly past dues. He further testified that about that time the collector said that:

"George Curtis and S. S. and my own dues frequently became delinquent, and I, so long as I always paid them upon notice, should provide some means for taking care of them * * * I arranged for the S. S. Hadley Bank to draw on my account for—to open an account there—and arrange for them. When they were exhausted, to draw."

It appears that, during the latter part of the time in question at least, the treasurer and collector of the local lodge were employees of this bank. S. R. Clark says that he does not have all of his drafts; that the date of the last draft that he accepted was sometime perhaps in 1920 or in the early part of 1921. He introduced about twenty drawn from 1909 to 1920, for various sums ranging from $2.48 to $33.06, most of them around $20; some payable to and indorsed by the collector, some payable to the bank mentioned, some having on them the memorandum "Lodge dues." These checks, considered in connection with the one of November 15, 1921, that will be presently referred to, traced back, would raise an inference that they were for arrears; and the court, in ruling on motion to direct, at end of plaintiff's rebuttal, said:

"They were made in such lump sums that it seems to me that it leads to at least the assumption that most of them were for arrearages, rather than payments in advance."

The court overruled the motion, and the defendant in its

subsequent evidence contented itself on this point with the testimony of its local treasurer, Watts, an employee of the Hadley Bank, and familiar with the S. R. Clark account and "with the transaction of George Curtis Clark's lodge dues during that time," that the only checking account that S. R. Clark had in the bank was the account for Royal Arcanum dues for himself and his brothers; that "there was never any arrearages,—the dues were never past due to the local lodge." He also says that the dues of George C. Clark were in arrears since February, 1921.

"The treasurer advanced the dues of those who happened to be delinquent at that time, and that had been the custom there while I was holding office."

There is no testimony that the Clarks knew, before November 4, 1921, that the dues were being advanced by the local lodge. Watts also testified:

"We advanced the money for those we thought owed the insurance, and did not suspend them simply automatically because they happened to be in arrears."

This testimony must be considered in connection with what occurred later. On November 4, 1921, the local lodge wrote the assured:

"* * * in regard to the Arcanum lodge dues, we find * * * you are in arrears since February. The amount to November 1st being $15.70. The lodge has been paying this for you out of the treasury and now we have no funds. Will you please help us out by paying up, or at least sending a part of it, so that we will know that you still want the insurance. No man at the present time can afford to let his insurance drop, so please take this matter up at once and send our collector your back dues."

It will be noted from this letter that the local lodge asserted that the dues were in arrears since February, and that the amount to November 1st was $15.70. It assumed that the insurance was still in force. It was in effect stated that the October dues had been paid out of the treasury, and were included in the $15.70.

On November 15, 1921, Grace A. Clark, sister of assured, went to the bank and, as she testifies, told the local treasurer that

her brother had been injured, asking him if she might pay the November dues. She therefore, if the jury accepted her testimony, assumed that the October dues had been paid. She says he asked her if she would pay the back dues. She said, "If necessary." He figured up the amount due, and she gave him a check. He told her that the receipts could be made out and she could have them. She says this check came back in the usual course of business in the canceled checks on the 27th of December. The check is not dated, but reads: "Pay to the order of Royal Arcanum." "G. C. Clark. [Signed] Mrs. Martha Clark." It is indorsed "Royal Arcanum. W. A. Roberts Col.," and is marked "Paid 12-12-21." Watts says that "G. C. Clark" was written on the check to show it was payment of dues; that he sent the draft for $1.35 to the supreme treasurer on the morning of November 15, 1921, and a telegram, "Do not suspend G. C. Clark Roll No. 148 Draft for dues follows;" but that the draft was returned by the supreme treasurer about ten days later. Thought it was in his desk. It was not produced, and there is no evidence that either the $15.70 or the $1.35 or the total of $17.05 was ever tendered back, or the Clarks notified that it was not accepted.

Defendant's witnesses testify, and Miss Clark denies, that she was told that George Curtis Clark had been suspended.

Defendant produced a report made by the local treasurer, claimed to have been made about November 12, 1921, but bearing date November 15, 1921, which indicated that Clark was suspended; also a record of the local council showing suspension November 10, 1921: but there was a record of notice of suspension produced, showing the announcement of suspension at a meeting December 8, 1921.

The objection made to the checks was that they were incompetent, irrelevant, and immaterial; and the objection made here is that they are wholly immaterial to the issue of waiver and estoppel, and that no assessment remained unpaid to the supreme council except the October, 1921, assessment. The claim is also made here that the Royal Arcanum had no knowledge of any delinquencies, and the assessments were promptly remitted to the supreme treasurer by the local lodge.

I. On this evidence we think it was for the jury to determine whether the assured had been customarily permitted to be delinquent in the payment of his dues, and whether the checks were for arrearages.

II. The defendant contends that the local lodge, in advancing the assessments from February to September of 1921, acted as the agent of Clark, and not as the agent of the supreme lodge.

In the application of the assured for membership, he agreed that, if any question arise with the supreme or any grand or subordinate council, it shall be presumed that every officer of the supreme, grand, and subordinate council "in the sending of notices and otherwise has in all respects fully performed his duty and fully complied with the laws of said council." He further agreed that, if he failed to present himself for initiation within sixty days from approval of medical examination, the examination and initiation thereafter, without further examination unless authorized by the supreme regent, should be void, and "no subordinate council has power or authority to waive the same." The benefit certificate is issued by the supreme council to the local council, and delivered by the local council. Agency is recognized, with only one expressed restriction, and that not applicable here.

To sustain its contention would be to permit the defendant to appropriate all of the benefits of the contract, and if death occurred, as it did occur, while the lodge and the assured are treating the certificate as in force, avoid liability.

This contention is settled adversely to defendant in *Trotter v. Grand Lodge*, 132 Iowa 513; *Fahey v. Ancient O. of U. W.*, 187 Iowa 825; *Collver v. Modern Woodmen*, 154 Iowa 615. See, also, Code of 1897, Section 1750 (this applies to life insurance companies); *Cook v. Federal Life Assn.*, 74 Iowa 746; *Biermann v. Guaranty Mut. Life Ins. Co.*, 142 Iowa 341, 346.

III. We think that, on the evidence, the jury might reasonably conclude that the defendant, through its agent, the local lodge, adopted a method of business by which the assessments were habitually received after delinquency, and the assured recognized as continued in good standing, and led to believe that the defendant was not insisting upon strict compliance with the terms of the contract as to time of payment; that he and

those looking after his assessments were led by defendant to believe that he was not in suspense for nonpayment of the October, 1921, assessment; that both parties, in their dealings with each other, recognized the certificate as in force; and that the October and previous delinquent assessments were paid within the customary time and accepted by the defendant in acknowledgment of the existence of this custom, and are still retained by it. *Trotter v. Grand Lodge*, 132 Iowa 513; *Collver v. Modern Woodmen*, 154 Iowa 615; *Conkling v. Knights & Ladies*, 183 Iowa 665; *Fahey v. Ancient O. of U. W.*, 187 Iowa 825; *Duncan v. Great Western Acc. Ins. Co.*, 192 Iowa 716.

Our discussion covers the points argued. The judgment is —*Affirmed*.

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.