Frank J. McAdams, Jr., Appellant, v. Elbert S. Smith, Auditor of Public Accounts of the State of Illinois, Appellee.

Gen. No. 47,609.

First District, Third Division.

April 6, 1960.

Rehearing denied May 12, 1960.

Albert W. Dilling and Kirkpatrick W. Dilling, of Chicago, for respondent-appellant.

Benjamin S. Adamowski, State's Attorney of Cook county, for appellee, Barnabas F. Sears, L. A. Wescott, William A. Cunnea, George S. Lavin, John A. Brown (Francis X. Riley, William W. Winterhoff, Barnabas F. Sears, and W. S. Bodman, of counsel) W. S. Bodman, amici curiae.

JUSTICE FRIEND delivered the opinion of the court.

Respondent, Frank J. McAdams, Jr., seeks to reverse an order of the Circuit Court, entered by Judge Cornelius J. Harrington, adjudicating him guilty of contempt of court, and imposing a sentence of one day in the Cook County jail and a fine of $350. The judgment was entered after a hearing upon a rule to show cause and respondent's answer thereto. The case out of which the contempt proceeding arose was a suit brought by C. Oran Mensik against Elbert S. Smith, Auditor of Public Accounts of the State of Illinois, involving custody of funds of City Savings

Association. The issues in that suit have recently been determined by the Supreme Court of Illinois and are not material to the questions here presented.

There is substantially no dispute as to the material facts. It appears that on May 12, 1958, the Circuit Court authorized the issuance of a subpoena against McAdams, requiring him to testify on deposition before Master Nathan M. Cohen at ten o'clock on June 3, 1958. Because the funeral services for Cardinal Stritch were held on that day, the deposition hearing was continued by agreement to ten o'clock on June 4, 1958, at which time respondent appeared before Master Cohen in response to the deposition subpoena but declined to testify without counsel. Respondent had attempted to engage Thomas M. Thomas for the June fourth hearing, but shortly prior thereto Thomas was compelled to decline retention on account of other commitments. Accordingly, respondent sought another continuance; by agreement the matter was brought before Judge Harrington, who continued the deposition hearing to June 11, 1958, at ten o'clock so that, in the interim, respondent could secure counsel. He at once attempted to contact Albert Dilling but, because of his absence from the city, respondent was not able to reach him until June ninth by telephone. At nine o'clock on the morning of June 10, 1958, they met at Dilling's office, and respondent engaged him as counsel. Dilling, however, was engaged to try a specially set case in the Criminal Court on June 11, 1958, and at once telephoned Barnabas F. Sears, attorney for defendant in the main litigation, to explain the situation and to ask his concurrence in setting the matter over until June 12, 1958, so that he coud be present. Sears advised Dilling that, because of an unexplained "emergency," he could not agree to a postponement. Dilling then wrote a letter

to Master Cohen explaining why he could not appear with respondent before the master on June 11, 1958, at ten o'clock, and sent a copy of the letter to Sears. On June 11, 1958, at ten o'clock respondent appeared before the master but declined to testify without benefit of counsel. Dilling's letter was read into the record, and Sears agreed that respondent was entitled to counsel. He refused, however, to accede to a further continuance but suggested that the parties again bring the matter before Judge Harrington at eleven o'clock. The parties then appeared before Judge Harrington at eleven o'clock, and a further hearing ensued, at which the circumstances were explained to the judge. In the course of that hearing Judge Harrington admonished respondent: "Better get yourself a lawyer by two o'clock, Mr. McAdams, because you are going to need one." The matter was then continued until two, on the court's own motion, and then changed to three, also on the court's own motion, because of a judges' meeting scheduled for two that day. Although the parties, including respondent, must have understood that they were to again appear before Judge Harrington at three o'clock, no formal order, either oral or written, appears in the record directing respondent to appear at three that day with respect to the taking of his deposition, or for any other purpose. It should be noted that respondent's deposition has never been taken, and that the taking thereof was continued generally by Master Cohen at the suggestion of defendant's counsel, despite the assertion of defendant's counsel that an exigency or emergency precluded any further postponement in the taking of respondent's deposition.

It appears that at noon on June 11, 1958, and shortly thereafter, while the courts of both Judges Harrington and Epstein were in recess, respondent's counsel sought

240

unsuccessfully to reach Judge Harrington to ask for a continuance until four o'clock that day, by which time Dilling felt that the case before Judge Epstein would have been concluded. The clerk in Judge Harrington's court admitted that he had talked with respondent's counsel three times during the noon recess with respect to the continuance of the hearing to later in the day. At approximately three o'clock, Kirkpatrick Dilling, son of respondent's counsel, appeared to "pinch hit," as he put it, for his father and to explain to the court that the case before Judge Epstein was still on trial but would be concluded in time so that his father could appear before the court with respondent at four o'clock; as he was making this request it was approximately ten minutes after three, and he urged that the hearing be continued for fifty minutes to permit the appearance of respondent and the elder Dilling before the court. The younger Dilling was unwilling to enter his appearance because, as he said, he had no authority to do so, but would enter the appearance of his father. Some discussion was had as to whether the time should be extended, but the chancellor refused to accede to the request and directed Sears to prepare a rule on respondent to show cause for failing to appear before Master Cohen. During this discussion Sears injected the following statement: "Just a minute. My understanding is, or at least it was my understanding, that Mr. McAdams proposed to come into court at 4:15 this afternoon with his counsel, Mr. Dilling, and I would assume that he proposes to appear for a deposition, pursuant to your Honor's ruling, and merely to file a rule on him would just further delay the depositions." Sears indicated his willingness, if such postponement met with the approval of the chancellor, to continue the matter to the following day for the taking of depositions, but

the chancellor, after further discussion, ordered Sears to draw a rule to show cause and make it returnable the following Monday.

It appears that respondent had been in his office on the afternoon of June 11, 1958, holding himself in readiness to appear before Judge Harrington with his counsel as soon as the Criminal Court case was concluded, but at ten minutes to four he was advised by his counsel that the chancellor had refused to continue the matter until four o'clock and that a rule to show cause had been entered.

Later that day respondent left the city for what he called a business trip and did not return to Chicago until some three or four weeks later. The rule to show cause was returned not served on June 16, 1958, and the chancellor thereupon ordered a writ of attachment against respondent. The writ issued but was not served. Respondent was advised of the entry of the rule to show cause and the writ of attachment, and requested his counsel to prepare a petition for change of venue. Such petition was prepared and forwarded to respondent, duly executed by him in Pittsburgh, Pennsylvania, on June 24, 1958, and presented to Judge Harrington on June 25, 1958; on June 30, 1958 objections thereto were argued at length, after which it was denied by the court.

The summer vacation ensued, and on July 8, 1958, respondent appeared before Judge Charles S. Dougherty, sitting in emergency, who entered an order quashing the writ of attachment and giving respondent twenty days in which to answer the rule to show cause, and setting a hearing on the said rule and answer for September 10, 1958. On that date respondent appeared before Judge Thomas J. Courtney, on whose calendar the case in chief appeared (Mensik v. Smith), seeking to have him conduct the hearing on the rule and answer, but Judge Courtney suggested that, as a matter

242

of courtesy, they ought to appear before Judge Harrington. Counsel acceded to this request, and there followed a lengthy hearing before Judge Harrington on the rule to show cause and respondent's sworn answer, at the conclusion of which the judgment order from which this appeal was taken, finding respondent guilty of contempt of court and sentencing and fining him, was entered. Judge Harrington refused to grant the motion of respondent's counsel for the staying of mittimus and setting a bond, saying that he lacked jurisdiction to grant such relief, and suggesting that respondent and his counsel come to the Appellate Court for the stay and fixing of a bond.

 It is first urged as ground for reversal that the chancellor erred in denying respondent's petition for a change of venue. Since this was a case of direct criminal contempt, we think respondent was not entitled to a change of venue. It is sometimes stated that direct contempt is that committed in the presence of the court while in session, whereas indirect contempt is that committed out of the presence of the court. People v. Gholson, 412 Ill. 294. The test seems to be whether or not the court knows, without hearing evidence, that contemptuous conduct actually occurred. People v. Howarth, 415 Ill. 499; People v. Harrison, 403 Ill. 320. The question is whether or not it is necessary for the court, in determining the issue, to hear evidence. Section 21 of the Venue Act (Ill. Rev. Stat. 1959, [c 146, § 21]) provides for a change of venue in criminal cases; it applies only to cases pending upon indictment or information. Section 21a of the act is the sole provision applicable by its terms to contempt proceedings and deals primarily with instances arising from an attack, occurring otherwise than in open court, upon the character or conduct of a judge when the proceeding is pending before the judge whose character or conduct was impugned. Under this section

a petition for change of venue, verified by the defendant, is required. In People v. Parker, 397 Ill. 305, the court stated that criminal contempts are *sui generis,* and there held that a petition for change of venue on account of the prejudice of two of the judges did not come within the provisions of the venue statute in contempt proceedings, citing Illinois Revised Statutes 1945, chapter 146, paragraph 21a. Respondent relies on People v. Goss, 10 Ill.2d 533, as holding that it was error for the chancellor in this case to deny the petition for change of venue. The contemptuous actions in the Goss case were statements made during television broadcasts by defendant—under the name of Tom Duggan he appeared regularly five nights a week on a program. The statements are not set out in full in the opinion, but they included the charge that a witness whose cross-examination had not been completed was "a 'professional sneak and liar,' " and that another witness was " 'a known associate of hoodlums.' " The court held that the publication must tend to affect the outcome of a pending case, citing Storey v. People, 79 Ill. 45, and People v. Gilbert, 281 Ill. 619. The court found the statements to be contemptuous but held that the trial court should have allowed a motion for change of venue. Although the court cites section 21, it is obvious that it must have intended to cite 21a. It is clear that in the Goss case the contempt was indirect; the court did not know the facts by its own observation in the courtroom, whereas in the present case it was direct since the court knew the facts without hearing evidence.

█ The principal question here presented, however, is whether the record supports the chancellor's finding of contempt. The conduct of respondent was held to have "tended to lessen the dignity of this court and . . . to bring the administration of justice into

disrepute." Ostensibly the chancellor held respondent to be in contempt of court because he failed to appear on June 11, 1958, at three o'clock with reference to a continuance for the taking of his deposition to the following day; the deposition subpoena had been issued on motion of counsel for defendant and was solely for the latter's benefit. As heretofore stated, respondent, from the time he had been served, had attempted to secure counsel so that he could comply with the directive of the subpoena. At the afternoon hearing on June eleventh, the younger Dilling had sedulously attempted to have the matter continued until four, when the Criminal Court case would have been concluded, and the senior Dilling would have had time to reach Judge Harrington's courtroom. This request for continuance for some forty or fifty minutes does not appear to us to have been unreasonable. Evidently Dilling and respondent were prepared to have the deposition taken the following morning, and Sears, counsel for defendant in the main litigation, indicated his willingness to have the short continuance granted if the request had met with the approval of the chancellor; however, Judge Harrington felt otherwise. Obviously respondent was not wanted in Judge Harrington's court at three o'clock that afternoon for the taking of a deposition because the deposition was to be taken before Master Cohen. The urgency of his presence at three o'clock may have had some connection with a petition filed by counsel for plaintiffs in the main suit demanding that respondent be required to return $125,000 in premiums received by the insurance brokerage firm of McAdams-Van Wagner, Inc., of which respondent was an officer, from City Savings Association on account of insurance of depositors' accounts in the International Guaranty and Insurance Company. This petition is not relevant

245

to the matter before us, but it appears from the colloquy of court and counsel that Judge Harrington may have desired to order respondent to deposit this sum of money with the clerk of the court.

Considering the record of events as heretofore set out, we do not think respondent's conduct was calculated to embarrass, hinder, or obstruct the administration of justice or to lessen the dignity and authority of the court. The emergency attributed to the appearance of respondent before the master was never explained; and, indeed, it is doubtful whether it ever existed, because respondent's deposition was never taken and was eventually continued generally by consent.

The judgment of the Circuit Court, finding respondent guilty of contempt and imposing a sentence and fine upon him, is reversed.

Judgment reversed.

BRYANT, P. J. and BURKE, J., concur.