C. C. Coyle, Petitioner, v. H. H. Sawyer, Judge, Respondent.

CONTEMPT: Acts in Presence of Court—Peremptory Orders. Upon the refusal, for stated reasons, of an attorney of record in the trial of a cause to produce an identified exhibit, the court may enter an order committing the attorney to jail until the order is complied with, and may so do without the filing of any formal information to show cause against such order, and without the order's being embraced in any written order of commitment.

*Certiorari to Des Moines Municipal Court.*—H. H. Sawyer, Judge.

NOVEMBER 19, 1924.

PROCEEDING in certiorari, to test the legality of an order committing petitioner to jail for an alleged contempt of court.— *Dismissed.*

*J. B. Dyer* and *Walter K. Stewart,* for petitioner.

*Charles Hutchinson,* for respondent.

DE GRAFF, J.—The petitioner was committed to jail for contempt of court "until such time as he complied with the order of the court." The contempt was predicated on Section 4463 of the Code of 1897, which reads:

"If the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it."

The primary contentions of the petitioner are: (1) That he did nothing that constitutes a contempt of court, and even though he did, the respondent did not proceed properly; (2) that the order entered was illegal and void.

To understand clearly the position of the petitioner, it is necessary to review the record which has been certified to us in this case. An action in law entitled E. A. Cavanaugh, plaintiff, v. Mary L. Brunsdon, defendant, was on trial in the municipal court of the city of Des Moines before Honorable H. H. Sawyer, presiding judge. The petitioner was the attorney of record for the plaintiff. The action was commenced by the plaintiff to recover judgment against the defendant in the sum of $300, which sum had been paid to the defendant by plaintiff, as alleged, in the purchase of twin beds represented to be antique rosewood, on the condition that plaintiff should have the option, upon delivery, to inspect, and either accept or reject same, and that, if they were rejected, the purchase price should be refunded. This was the pleaded contract in issue; and it appears that, during the examination of witness B. J. Cavanaugh, husband of plaintiff, certain written documents were marked as exhibits, one of which is known as Exhibit B. The

witness was asked if he had received Exhibit B on or about the date which it bears, to which an affirmative reply was given. Further questioning elicited the circumstances under which the document came into the possession of the witness, the time, and that it was in the handwriting of the defendant Mary L. Brunsdon. No further reference was made to Exhibit B on direct examination.

On cross-examination, counsel for defendant asked the witness Cavanaugh to permit him to have Exhibit B for the purpose of further examination. At this point, petitioner Coyle, counsel for plaintiff, said: "You will not see it until I see fit to give it to you." The court thereupon remarked that he did not deem it necessary to produce it for cross-examination at that time. Counsel for defendant then stated that he could not cross-examine the witness unless he examined the document, and stated further:

"I do not know of any rule by which plaintiff can identify exhibits, talk about them, and then put us in a position so that we cannot cross-examine in regard to them."

The court then permitted the witness to state the date on the exhibit, and that the date "would be about three months before the beds were finally delivered."

"Q. What is this mysterious instrument, Exhibit B? (Objected to as not the best evidence.)

"The Court: He may state what it is.

"A. That is a note written to me by the defendant. Q. About these beds? (Same objection.)

"Court: He may answer 'Yes' or 'No.' A. Yes."

The defendant then offered in evidence Exhibit B. Petitioner Coyle then stated: "He will have a hard time to get it in." Counsel for defendant replied: "Nevertheless, we offer Exhibit B in evidence." Further objection was made that the exhibit had not been offered in evidence by plaintiff; that it is plaintiff's property; that no notice to produce had been served upon the plaintiff; that defendant had no right to the exhibit at this time or to be apprised of the contents thereof; and that "the defendant is not going to be apprised of what is in the instrument until we get good and ready to let him know what

it is." The court then stated: "I know of no rule that would prevent the offering of anything in evidence that is here in court."

"Petitioner Coyle: Let the record show that we refuse to produce it.

"The Court: The court orders that the instrument Exhibit B be produced in evidence.

"Mr. Coyle: We will decline, as before, to produce the exhibit in evidence."

Apparently the petitioner had then taken possession of the exhibit.

After this colloquy and persistent refusal on the part of Mr. Coyle to produce the instrument or respect the order of the court for its production, he was ordered committed to jail until such time as he complies with the order of the court. Thereupon, petitioner Coyle said:

"The attorney against whom the commitment is ordered objects to the action of the court in the last entry, in that it is without any information being filed for contempt, without any opportunity given to the attorney declared to be in contempt to plead, or defend to the information, and without any opportunity being given to defend against the charge of contempt.

"The Court: Let the record show that the attorney is committed for contempt of the court while engaged in the trial of the case, and is and was personally within the court at the time; that the attorney refused to comply with the order of the court and produce documents as ordered by the court. The bailiff will arrest the attorney Mr. Coyle and place him in jail until such time as he complies with the order of the court.

"Mr. Coyle: The attorney still refuses to produce the document, and excepts to the entry.

"The Court: The order of the court is that you be confined in jail until you see fit to comply with the order of the court. This case will be continued until such time as the order is complied with."

This happened on June 17, 1924. On the following morning, and after certiorari had issued from this court, attorney Coyle appeared in the municipal court before Judge Sawyer,

either to argue the proposition relative to the introduction of Exhibit B or the legal basis for the order of contempt made by the court. The court specifically asked attorney Coyle at that time whether he was intending "to make an argument or to make a record." To this question Mr. Coyle replied:

"I am merely undertaking to show this court at this time that this case should proceed to trial."

The court replied:

"A ruling was made at the close of the testimony last evening that this case should be continued until such time as plaintiff or his counsel produced Exhibit B. I will ask at this time, 'Have you Exhibit B with you?'

"Mr. Coyle: I have.

"The Court: Are you ready to produce it?

"Mr. Coyle: No, sir."

It was then intimated by the court that the continuance would stand until such time as the exhibit was produced, in conformity to the order of the court.

It will be observed that the exhibit in question was in court at the time of the colloquy that culminated in the order of commitment. Clearly, there was no necessity on the part of the defendant to adopt the statutory method to compel the production of a paper in the possession of the adverse party. Sections 4654 to 4657, Code of 1897. The exhibit by reference was in the record, and it had been sufficiently identified by the plaintiff's own witness. It is also clear that the court had jurisdiction of the parties and of the subject-matter. The ruling of the court on the objections constituted an adjudication of the matter in controversy, and so long as it remains unreversed, it is to be obeyed. As said in *State v. Baldwin,* 57 Iowa 266:

"There would be an end of all subordination and social order, if parties could disregard judicial orders, and when proceeded against for contempt, call in question the correctness of the order itself."

The instant petitioner was one of the attorneys of record in the case on trial, and was in possession of the exhibit. He was within the jurisdiction of the court. He was before the court as an official of the court. He had taken the initiative and

produced the paper, had it marked as an exhibit, and questioned the witness concerning it. He cannot, therefore, in this proceeding question that the foundation for the order of commitment had been properly laid. The petitioner contends that no opportunity was given to him to show cause why he should not be punished for failure to respect the ruling of the court as to the admissibility of Exhibit B when offered in evidence by the defendant. Section 4465 of the Code of 1897 provides:

"Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. In either case he may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved."

But petitioner was then in court. He did make an oral explanation of his reasons why he did not produce the exhibit, which had been subject to the ruling governing its admission. There was no occasion to give him time to make a written explanation, within the purview of the statute. His attitude from the beginning was to the effect that he would not produce it until he "got good and ready." The law does not contemplate that a court shall do a useless thing, or go through an idle ceremony. In open court, he flatly refused to comply with the order of court. The petitioner did explain his position to the court, and it is quite apparent that the court viewed that explanation as insufficient. The court at the time was in the discharge of an official duty, and petitioner openly resisted an order of that court while in the discharge of a judicial duty, which clearly tended to impair the respect due to its authority. Clearly, the act was within the purview of the definition of contempt, as defined by Section 4460 of the Code of 1897. The conduct of the petitioner and the language used unmistakably indicate that he would not comply, and that he was ready to be punished for contempt, if his act was so considered by the trial judge. This in itself constituted a waiver of his right to be heard in further explanation or excuse of his conduct. He

did make an oral explanation. Nothing would have been effectuated by a further opportunity to explain, and a rule to show cause would have been an idle ceremony not exacted or contemplated by the law under the circumstances. See *Hardin v. Silvari*, 114 Iowa 157; *State v. District Court*, 124 Iowa 187. The formal order of record specifically stated what the act was which the petitioner must perform. It is suggested that no actual warrant was issued in the matter, setting out the act which the petitioner must perform before he was released from jail. We do not believe in emphasizing a mere technicality in a matter of this kind. Petitioner well knew the content and intent of the order concerning which he refused to comply. No formal warrant was issued, but this in no way prejudiced the petitioner, nor did it jeopardize any lawful right possessed by him. The petitioner was in a position to perform, and no legal reason is shown why he should not perform. Under Section 4463, Code of 1897, the power is expressly vested in the court to imprison until the act ordered is performed.

The petition for writ of certiorari is dismissed.—*Dismissed.*

ARTHUR, C. J., and STEVENS and VERMILION, JJ., concur.