Josephine Provenzale, Plaintiff, v. Frank Provenzale, Defendant.
People of State of Illinois, Defendant in Error, v. Daniel Lardino, Plaintiff in Error.

Gen. No. 44,907.

Opinion filed January 23, 1950. Released for publication February 3, 1950.

MURPHY, PEARSON & O'CONNOR, and HARRY A. BIOSSAT, all of Chicago, for plaintiff in error.

JOHN S. BOYLE, State's Attorney, for defendant in error; GORDAN B. NASH, MELVIN F. WINGERSKY, GEORGE B. DUGGAN, and PETER G. KUH, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Daniel Lardino, plaintiff in error, sued out a writ of error to review an order finding him guilty of a direct contempt of court and sentencing him to serve 60 days in the County Jail of Cook County. The alleged contempt arises out of an affray between plaintiff in error and Frank Provenzale, the divorced husband of plaintiff in error's sister Josephine, which occurred in the corridor outside the courtroom occupied by Honorable JULIUS J. HOFFMAN, Judge of the Superior Court of Cook County. Lardino, Frank and Josephine Provenzale had participated in a hearing before Judge HOFFMAN on Provenzale's motion for a reduction in alimony and child support, which was denied. The parties thereupon departed, and in a short time there was a commotion in the hall. Some minutes later Lardino and Provenzale, the latter bleeding from a cut or cuts on the head, were brought before the court, Provenzale accusing Lardino of having assaulted him without provocation, and the latter admitting the assault but contending that it was committed after Provenzale had called him a foul name and had made threatening gestures toward him.

346

Counsel for plaintiff in error contend that if their client was guilty of any contempt it was indirect, occurring out of the presence of the trial judge under circumstances which required a written citation and an opportunity afforded plaintiff in error to purge himself therefrom by answer under oath. Defendant in error, represented by the State's Attorney of Cook County, contends that there was a direct criminal contempt committed and that under the circumstances the court was justified in proceeding summarily to deal with and punish the contemnor.

It therefore becomes of paramount importance to establish the locale of the assault. On the day following the occurrence the trial court held a formal hearing. At that time a representative of the state's attorney was present to prosecute. The plaintiff in error was represented by counsel, and the trial judge was represented by a lawyer who appeared as *amicus curiae* and took an active part in advising the procedure followed. The attorney for plaintiff in error stated that the question on the hearing was whether the charge involved a direct contempt of court, after which the following discourse ensued: "The court: I will determine that. I appreciate that is one of the questions and I will do it in accordance with the law, as I agree with the law. . . . Mr. Murphy: I think your Honor should determine at this time whether we are proceeding on a direct contempt. The court: I have a right under the law to hear evidence and I will proceed to do it. Will you present the evidence, please? . . . Mr. Eisenman has consented very kindly to assist the court."

Thereupon the court proceeded to hear the testimony of Frank Provenzale, who testified that as he was opening the courtroom door and was turning around to see if his attorney was behind him, somebody jumped on him and hit him with a sharp instrument. He was

347

partially corroborated by his attorney who testified that from the position where he was standing in the courtroom he saw Provenzale go to the door; that he would not say he saw him pass through the door, but saw him almost pass out of it; that "I saw a fist strike but I couldn't tell whose fist it was. I couldn't see the rest of it." The court's personal bailiff testified that he heard some pounding and scuffling and "I ran out the door and as I ran out . . . I saw him (indicating Lardino). . . . I asked him to come back in court in front of your Honor. . . . When I ran out in the hallway there were quite a few people there." Lardino testified that the occurrence took place in the hallway outside the courtroom; that as he walked out Provenzale called him a "dirty son-of-a-bitch"; that "he came right behind me and lifted his hand up and I thought he was going to strike me and to protect myself I struck him back. I did not have anything in my hand." He was corroborated by witness Samuel Patterson, an attorney who happened to be present in the hall and who fixed the place of the encounter as in the hall close to the doors of the courtroom, stating that the doors to Judge HOFFMAN's courtroom were closed at the time.

After the court had heard the evidence the following colloquy took place:

"Mr. Eisenman: Before you read that, I think at this time, for the purpose of the record, I think it might be proper if your Honor would make a statement as to what he saw.

". . .

"The Court: I will make it. . . . Thereafter the parties left the Bar and another matter was called and the Court was engaged in the hearing of that other matter. In a very short time thereafter, there was a loud commotion in the hall, right outside the main door of the courtroom. I look at the doors now as I am sitting here.

Within a short time thereafter the witness, Frank Provenzale was brought into the courtroom, his face and head full of blood, his face substantially bruised on various parts thereof. My bailiff, the witness Maggiore, later brought in the respondent before the Court, having apprehended him in the hall . . . .

" . . .

"The Court: . . . The State's attorney suggested and if Mr. Eisenman is agreeable, I will agree, so please prepare a comprehensive order in keeping with the decision, finding the respondent guilty of direct criminal contempt and the respondent will be sentenced—I think the State's Attorney has been most generous in his suggestion that it be a term of sixty days in the County Jail. Let the order so provide."

Thereafter (Mr. Eisenman apparently having been agreeable), an order was prepared, reciting that the "attack and actions of the respondent, all of which occurred in the actual presence of this Court and while the Court was in actual session, caused such commotion, turmoil and tumult that it was necessary to require the Court to suspend hearing of the cause, or causes, then on trial before him."

There would appear to be an inconsistency between the detailed findings of the court as appear in his statement to the effect that the affray took place in the hall outside of his presence and the finding in the order that the commotion took place in the actual presence of the court.

It is entirely clear from an examination of the evidence and statement of the trial judge that the quarrel between plaintiff in error and Provenzale took place out of the physical presence of the court in a hallway leading up to the courtroom door. It also seems to be a fair inference from the statements of the judge and his advisers that in holding the plaintiff in error guilty of direct criminal contempt the court proceeded upon

the legal theory that it is not necessary that an assault take place in the physical presence of the court if it is in such close proximity thereto that the sound disturbs the deliberations of the judge on the bench.

 We think the trial court erred in extending the doctrine of direct contempt to the extremes indicated. It has frequently been held by the Supreme Court of this State that where the contempt is within the view of the court and is of such nature as to disturb the orderly processes of court procedure, the contempt is direct and criminal, and the court may proceed summarily without the necessity of taking evidence. The reason for this rule is obvious in that the court is entitled to rely upon the validity of his own sense perception and requires no extraneous evidence to corroborate such knowledge. But where the court is not in a position to rely upon his own senses as a criteria of truth, but requires the evidence of others, not only for the purpose of determining whether or not disorder has occurred, but whether the conduct causing the disorder was contumacious, then it is the rule that the contempt is indirect. The important remedial distinction between the two classes of contempt is that in the indirect contempt the alleged contemnor has a right to have a written complaint or citation filed, to which he, in turn, is entitled to reply by way of sworn answer. The facts in such answer may not be controverted, but must be accepted as true. If the matters set forth in the answer are untrue, the affiant is subject to respond to perjury charges. *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.*, 256 Ill. 196, 200; *People v. McDonald*, 314 Ill. 548, 552. In the instant case the judge, counseled by a lawyer who was appointed to assist him, made a statement ''for the record'' which clearly indicates that he did not see what happened and was unaware of the nature of the affray until he was advised some minutes after the occurrence by his bailiff, who brought the

parties into the courtroom. Clearly, any facts upon which the contempt citation could be based must necessarily have come from witnesses and not from the court's own personal knowledge of the occurrence.

Reliance is placed by the defendant in error upon the case of *People v. Clancy*, 239 Ill. App. 369, where the Appellate Court affirmed an order of contempt in a summary proceeding where the alleged contempt occurred in a corridor outside of the courtroom of the trial judge, stating at page 375: "Here the court had complete knowledge of the real matter that constituted the contempt, namely, the disturbance of its proceedings. . . . We do not think, therefore, that a summary proceeding is necessarily confined to matters, which come within the actual vision and hearing of the judge himself."

In the *Clancy* case the court apparently held that a mere commotion which can be heard by the court and which interrupts the court proceedings is sufficient to constitute a direct contempt, and that all that is further required is to ascertain the names of the parties who caused the commotion, and that such ascertainment by extraneous testimony is not violative of the principles underlying the distinction between direct and indirect contempt. The Illinois Supreme Court has held the contrary as late as the decision in *People v. Whitlow*, 357 Ill. 34, which, on facts and principle, is squarely applicable to the case at bar. In that case an affray took place upon a walk adjacent to the courtyard leading to the courthouse. As a result, a disturbance occurred in and about the courtroom. The sitting judge dispatched all the court officers, including an officer in charge of a jury then in deliberation upon a verdict, to quell the disorder in the courtyard. He also directed the state's attorney to make an immediate investigation of the cause of the disorder and to bring the guilty parties before the court to be punished for contempt.

Pursuant to this command, the state's attorney made an investigation, brought the plaintiffs in error into court, and asserted that they were the guilty persons and asked permission to introduce evidence against them on the following morning. After a hearing, the court found that plaintiffs in error had violently assaulted one Reese, an attorney at law, while he was on his way to the courtroom to file a pleading, and that the plaintiffs in error were in direct contempt and sentenced them to six months in the county jail. The question arose as to whether or not the contempt was direct or indirect, and the court said, at pages 37, 38:

". . . Upon the commission of a contempt in open court, it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. . . . In a case where the proceeding for contempt is for acts committed, not in the presence of the court and not in futherance of the remedy sought or in enforcement of the court's orders or decrees but to maintain its authority and to uphold the administration of justice, if the party should answer denying the alleged wrongful acts, his answer is conclusive, extrinsic evidence may not be received to impeach it, and he is entitled to his discharge. . . . On the other hand, if the answer admits the material facts charged to be true and the facts constitute a contempt of court, punishment is imposed. . . . In either event, the offender is tried solely upon his answer.

"From the evidence set forth in the order of commitment, it is manifest that on January 31, 1933, while the circuit court of Franklin county was in session, there was misbehavior outside of the building in which court was being held, and that owing to its disorderly character, the court was interrupted in the conduct of its business. It is equally clear that the assault constituting

352

the misbehavior did not occur in the presence of the presiding judge under circumstances which gave him personal knowledge of the facts. Upon ascertaining that the plaintiffs in error had assaulted Reese, the judge proceeded on the theory that contempts had been committed in his immediate presence or in a place set apart for the use of a constituent part of the court. No complaint in writing was filed which the plaintiffs in error might have answered under oath and thereby purged themselves of the charge of contempt. The proper practice would have been the issuance of a rule to show cause. To such a rule, the plaintiffs in error should have been allowed, if they so elected, to interpose sworn answers, and to be tried upon those answers.

"The judgment of the Appellate Court and the order of the circuit court are reversed."

No reference to the further authorities cited by both parties is deemed necessary. The judgment order of the Superior Court of Cook County is reversed.

*Judgment order reversed.*

NIEMEYER and FEINBERG, JJ., concur.