Charles KNOX, Plaintiff,

v.

**MUNICIPAL COURT OF the CITY OF DES MOINES, POLK COUNTY, Iowa, and Honorable Ray Harrison, Judge, Defendant.**

No. 54564.

Supreme Court of Iowa.

April 9, 1971.

Charles F. Glenn, West Des Moines, for plaintiff.

John H. King, Asst. County Atty., for defendant.

STUART, Justice.

At about 12:30 p. m., November 5, 1970, Charles Knox appeared in the Des Moines Municipal Court before Judge Howard Brooks in response to a summons charging him with operating a motor vehicle while his license was under suspension. It is not necessary to describe the events that took place at that time in detail as Knox does not contend his conduct was not contemptuous. It is sufficient to state he was uncooperative, insolent, insulting and disrespectful toward the court throughout the proceedings. After the patrolman had testified Knox was asked if he had anything to say. He said: "I am guilty of nothing but helping the people."

Judge Brooks then stated he had no alternative but to find Knox guilty and sentenced him to five days in the county jail. The violation carries a mandatory jail sentence of not less than two nor more than thirty days. Section 321.218, Code 1971. Knox looked toward one of his friends in the courtroom, turned and spit on the judge. A disturbance developed in the courtroom which resulted in the confinement of Knox and some of his friends. The judge left the courtroom immediately after the spitting incident.

Knox was "arraigned" on a "county attorney's information" before Judge Harrison about 6:00 p. m. the same evening. His conduct at that time was such that he was summarily found guilty of contempt before Judge Harrison and sentenced to six months in the county jail. Hearing on the contempt matter occurring in Judge

Brooks' court was set for the next morning. The next morning Mr. Glenn was appointed to defend Mr. Knox and trial was reset for Tuesday, November 10, 1970. At the conclusion of the hearing Knox was sentenced to a second six months term in the county jail.

We granted Writs of Certiorari to review the proceedings in both contempt matters. In this opinion we are concerned only with the contempt proceeding which arose out of the incidents that took place before Judge Brooks.

█ I. The power to punish for contempt is inherent in the nature and constitution of a court. It is not derived from statute, but is implied as it is necessary to the exercise of the other powers of the courts. Without it, the administration of the law would be in continual danger of being thwarted by the lawless. Ex parte Terry (1888), 128 U.S. 289, 303, 9 S.Ct. 77, 32 L.Ed. 405, 408. It is indispensable to the protection of due and orderly administration of justice and in maintaining the authority and dignity of the court. "But its exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." Cooke v. United States (1925), 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767, 775. See Haines v. District Court (1925), 199 Iowa 476, 480, 202 N.W. 268, 270; State ex rel. Arthaud v. District Court (1904), 124 Iowa 187, 190, 99 N.W. 712, 713.

█ Contempt is classified in two ways: Criminal or civil and direct or indirect (constructive). Offenses against the dignity or process of the court, whether committed in or out of the presence of the court are criminal contempts. Offenses against the party for whose benefit a court order was made are civil contempts. As we treat all contempts as quasi-criminal in Iowa, Brown v. District Court (Iowa, 1968), 158 N.W.2d 744, 748; Huston v. Huston (1963), 255 Iowa 543, 549, 122 N. W.2d 892, 896; Brody v. District Court (1959), 250 Iowa 1217, 1221, 98 N.W.2d

726, 729, this sometimes nebulous distinction is no longer of significance. 20 Iowa Law Review 121–128; But see Bloom v. Illinois (1968), 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522, 528. Chapter 665 makes no such distinction. Drady v. Given (1905), 126 Iowa 345, 348, 102 N.W. 115, 116.

"An indirect or constructive contempt is an act committed, not in the presence of the court, but at a distance from it, which tends to degrade the court or obstruct, interrupt, prevent or embarrass administration of justice." Wharton's Criminal Law, Vol. 3, page 703, § 1330.

A direct contempt consists of words spoken or acts committed in the presence of the court which tend to have the same effect.

The "presence of the court" extends beyond those places within the sight and hearing of the presiding judge. A court "at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court." Ex parte Savin (1888), 131 U.S. 267, 277, 9 S.Ct. 699, 702, 33 L.Ed. 150, 153; Cooke v. United States, supra, 267 U.S. at 535–536, 45 S.Ct. at 394–395, 69 L.Ed. at 773–774; Harding v. McCullough (1945), 236 Iowa 556, 561, 19 N.W.2d 613, 617; People v. Skar (1964), 30 Ill.2d 491, 198 N.E.2d 101, 102. In re Neff (1969), 20 Ohio App.2d 213, 254 N. E.2d 25, 33.

█ The nature of the contempt is determined at the time the offensive act occurs. If it occurs in the presence of the court, as in this instance, it is a direct contempt. It is not converted into indirect contempt because the court chooses *procedurely,* to have the matter heard by a judge other than the one before whom the contempt was committed. However, procedural requirements vary depending upon whether the judge presiding at the con-

tempt hearing can act upon his own personal knowledge or must rely on evidence.

"The mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed 'upon its own knowledge of the facts, and punish the offender, without further proof and without issue or trial in any form,' (Ex parte Terry, 128 U.S. 289, 309, 9 S.Ct. 77, 32 L.Ed.2d 405); whereas, in cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished. * * * But this difference in procedure does not affect the question as to whether particular acts do not, within the meaning of the statute, constitute misbehavior in the presence of the court." Ex parte Savin, supra, 131 U.S. at 277, 9 S.Ct. at 702, 33 L.Ed. at 153; Bloom v. Illinois, supra, 391 U.S. at 204, 88 S.Ct. at 1483, 20 L.Ed.2d at 530.

"The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' * * * before the public." In Re Oliver (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 509, 92 L.Ed. 682, 695.

█ Judge Brooks could properly have acted instantly and held petitioner guilty of contempt without violating his constitutional rights. Mayberry v. State of Pennsylvania, filed January 20, 1971, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532; Illinois v. Allen (1970), 397 U.S. 337, 90 S.

Ct. 1057, 25 L.Ed.2d 353; Harris v. United States (1965), 382 U.S. 162, 164, 86 S.Ct. 352, 15 L.Ed.2d 240, 242; In Re Oliver, supra; Harding v. McCullough, supra, 236 Iowa at 562, 19 N.W.2d at 617. However, as only a short trial was involved, he was well advised to proceed to a conclusion in the face of vicious and unjustified verbal attacks on the court and the judge. When the ultimate contemptuous act took place, action had been completed on the matter before him and summary proceeding to preserve the order and dignity of court proceedings was no longer necessary. Judge Brooks commendably declined to consider the contempt matter himself but observed the admonitions of the United States Supreme Court and our own cases to substitute another judge whenever possible. Mayberry v. Pennsylvania, supra; Cooke v. United States, supra, 267 U.S. at 539, 45 S.Ct. at 395, 69 L.Ed. at 775; Brown v. District Court, supra, 158 N.W. 2d at 749; Newby v. District Court (1967), 259 Iowa 1330, 1342, 147 N.W.2d 886, 894; Bisignano v. Municipal Court (1946), 237 Iowa 895, 910, 23 N.W.2d 523, 532; Drady v. Given, supra, 126 Iowa at 353, 102 N.W. at 118. Failure to do so can under appropriate circumstances require a remand for hearing before another judge. Mayberry v. Pennsylvania, supra; Offutt v. United States (1954), 348 U.S. 11, 75 S. Ct. 11, 99 L.Ed. 11; Cooke v. United States, supra.

█ However, by substituting a different judge, the misconduct was no longer within the sight and hearing of the presiding judge. Judge Harrison could not act on his own knowledge. Evidence was necessary and petitioner was entitled to "[B]e advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf either by way of defense or explanation." In Re Oliver, supra, 333 U.S. at 275, 68 S.Ct. at 508, 92 L. Ed. at 695; Cooke v. United States, supra.

Did the proceedings here afford Knox the due process required above? We hold that it did. He was notified of the charges against him by the information and arraignment. He was represented by counsel and afforded a full hearing. Counsel announced in open court that petitioner was not going to introduce evidence and rested. Petitioner obviously had no wish to attempt to purge himself from contempt. His parting remarks to Judge Harrison were: "You are still a Fascist and your swastika (indicating) Heil Harrison, Heil Harrison and all that shit. You're still a Fascist." Knox was not denied any constitutional rights.

II. We now turn our attention to the contempt chapter of the Code, chapter 665. We have acknowledged legislative limitations imposed on punishment for contempt and have recognized statutory procedural requirements. Harding v. McCullough (1945), 236 Iowa 556, 558, 19 N.W.2d 613, 616; State v. Baker (1937), 222 Iowa 903, 907, 270 N.W. 359, 361; Haines v. District Court (1925), 199 Iowa 476, 479–480, 202 N.W. 268, 270. Legislative definitions of contempt are so broad they in no way conflict with the inherent power of the court to punish for contempt. Harding v. McCullough, supra, and citations.

The provisions of this chapter have been substantially the same since the 1851 Code. The language of the sections hereinbefore discussed is identical. The statutes clearly provide a procedure for matters involving indirect or constructive contempt. They also state what must be done when a judge summarily rules on contemptuous conduct of which he has personal knowledge. In view of the recent concern with due process and fair trial, contempts which could have been handled summarily will, with increasing frequency, be heard before a different judge. The statutes do not clearly set forth the procedure to be followed in such case and require our interpretation. It is difficult to make 120-year old statutes fit the modern concepts of civil rights.

III. Petitioner contends no affidavit was filed as required by section 665.6, which provides: "*Unless the contempt is committed in the immediate view and presence of the court, or comes officially to its knowledge,* an affidavit showing the nature of the transaction is necessary as a basis for further action in the premises."

We must interpret the italicized language to determine if an affidavit is required under the circumstances shown here. We believe the legislature intended to draw a distinction between direct and indirect contempt as previously defined. Others have reached the same conclusion.

"Generally, the proceedings in cases of constructive (indirect) contempt are commenced by the filing of an affidavit stating the facts showing the contempt." Tuttle v. Hutchinson (1916), 173 Iowa 503, 519, 151 N.W. 845, 851.

"Although the Iowa statute defines direct and constructive contempts for the purpose of trial * * *." 20 Iowa L. Rev. 124.

The coupling of "immediate view" with the "presence of the court" prevents us from applying the broader and more inclusive definition of the "presence of the court" to that phrase as used in the statute. The phrase as used there is equivalent to a contempt in the sight and hearing of the presiding judge entitling him to invoke the summary procedure.

The language "or comes officially to its knowledge" is unique to the Iowa statute. We have held that "the presentation of a subpoena with the return thereon, even though irregular in form, and the failure of a witness to appear, was a sufficient basis for the proceeding as for a contempt coming officially to the knowledge of the court; the failure of the witness to appear being necessarily manifest." Coutts v. District Court (1910), 149 Iowa 297, 302–303, 128 N.W. 362, 364. It necessarily refers to conduct which occurs outside the physical presence and personal knowledge

of the presiding judge. We interpret this language to include the broader definition of "presence of the court" namely: "every part of the place set apart for its own use and for the use of its officers, jurors and witnesses".

■ Contemptuous conduct in the courtroom of a judge other than the one presiding at the contempt hearing falls within this definition making this case a direct criminal contempt. We therefore hold it was not necessary to file an affidavit before proceeding further.

■ IV. There is no merit in petitioner's claim that failure to comply with section 665.9 renders the proceedings invalid. Section 665.9 provides: "If the court or judge acts upon personal knowledge in the premises, a statement of the facts upon which the order is founded must be entered on the records of the court or be filed and preserved when the court keeps no record and shall be part of the record."

■ This statute applies to the summary proceedings to be used when the order is made by the judge before whom the contempt actually occurred. It is to preserve a record of the facts found to be contemptuous, which might not otherwise appear of record, in the event contemnor wishes to seek review by certiorari. It has no reference to an evidentiary hearing which is covered by section 665.8.

V. Section 665.7 provides: "Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. In either case he may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved."

■ A. Petitioner claims the trial court erred in overruling his motion to dismiss the contempt proceeding as he was not personally served with a rule to show cause as provided in section 665.7. Respondent claims such service was not necessary. We agree.

We interpret the statute to provide that if the contemptuous act occurs in the immediate view and presence of the presiding judge so he may act upon his own knowledge, he may proceed summarily. If the presiding judge does not proceed summarily and the matter is heard before a different judge, there are two alternatives: (1) serve the offender with a rule to show cause and give him a reasonable time therefor, or (2) bring him before the court forthwith or on a given day by warrant, if necessary.

In this instance the presiding judge did not act summarily. The State elected to bring the offender before the court forthwith on a "preliminary information" and hold an "arraignment", at which time hearing was set for a given day. As the State chose the second alternative and as we have held in Division I that the information and arraignment satisfied constitutional notice requirements, it was not necessary to serve contemnor with a rule to show cause.

■ B. Petitioner states section 665.7 requires that he be given a reasonable opportunity to explain his conduct. This is true. Watson v. Charlton, supra, 243 Iowa at 86–89, 50 N.W.2d at 610–611; Harding v. McCullough, supra, 236 Iowa at 562, 19 N.W.2d at 617; State ex rel. Arthaud v. District Court (1904), 124 Iowa 187, 189, 99 N.W. 712, 713; Russell v. French (1885), 67 Iowa 102, 105, 24 N.W. 741, 742. It is not clear whether he claims he was denied that right. If this is the claim, it has no merit. He had the opportunity to introduce evidence but declined to do so. He could have filed a written explanation if he so desired from the time counsel was appointed until he was found guilty of contempt. He made no request for time to file a written explanation. In any event,

his conduct throughout the proceeding constituted a waiver. Waiver has often been defined as an intentional relinquishment or abandonment of a known right or privilege. No oral or written expression of waiver is required. It may be found from an examination of all the attendant facts and circumstances. It may be ascertained from a person's conduct. Babb's, Inc. v. Babb, Iowa, 169 N.W.2d 211, 213; State v. Williams, Iowa, 182 N.W.2d 396, 400 and citations in each. See also United States v. Chichester, 9 Cir., 312 F.2d 275.

In Hexom v. Maccabees, 140 Iowa 41, 46, 117 N.W. 19, 20 (1908) this court said: "A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of such relinquishment, * * *."

 The general rules of waiver are applicable in contempt proceedings. An alleged contemnor may by his conduct be found to have waived procedural rules or requirements. Harriet Cotton Mills v. Local No. 578, Textile Wkrs., 251 N.C. 218, 111 S.E.2d 457, 79 A.L.R.2d 646; Licata v. United States, 9 Cir., 429 F.2d 1177; Anno. 79 A.L.R.2d 657, 665.

There was no indication he wished to explain his conduct or attempt to purge himself of contempt. By continuing his contemptuous conduct, he waived his right to make a written explanation of his preceding contemptuous conduct. Coyle v. Sawyer (1924), 198 Iowa 1022, 1027–1028, 200 N.W. 721, 723; Hardin v. Silvari (1901), 114 Iowa 157, 159, 86 N.W. 223, 224. "[T]he offer of an opportunity therefor would have been an idle formality, not exacted by the law." Hardin v. Silvari, supra.

In summary we hold that a presiding judge may proceed summarily to determine a matter of contempt when the misconduct has occurred in his immediate view and presence without an affidavit (665.6) or a rule to show cause (665.7). Before the offender is adjudged guilty of contempt and punished he must be given a reasonable opportunity to make a written explanation of his conduct under oath, unless the offender has, by his conduct waived such right. The facts upon which the contempt order is founded must be made a part of the record (665.9).

In the case of a direct contempt which is being presented to a judge other than the one before whom the misconduct occurred, the judge may proceed without an affidavit (665.6). The contemnor may appear voluntarily, be personally served with a rule to show cause, or brought before the court by legal process including a warrant (665.7). Evidence must be taken and preserved (665.8). Contemnor must be given the opportunity to present a defense and/or explain his conduct, in writing if he so requests before judgment and sentence (665.7) unless he has by his conduct waived such rights.

We hold the procedure followed by the State in this instance met constitutional and statutory requirements.

For other contempt matters arising out of the incidents involved herein see Knox v. Honorable Ray Harrison, Judge, No. 23/54601; DePatten v. Honorable Ray Harrison, Judge, No. 19/54552; Green v. Honorable Ray Harrison, Judge, No. 20/54553; Rhem v. Municipal Court of City of Des Moines and Honorable Ray Harrison, Judge, No. 21/54555, filed as of the date of this opinion, 185 N.W.2d 718, 720, 722, 724.

Writ annulled.

MOORE, C. J., and MASON, LeGRAND and REES, JJ., concur.

UHLENHOPP, RAWLINGS and BECKER, JJ., dissent.

UHLENHOPP, Justice (dissenting).

Cases 54552, 54553, 54555, 54564, and 54601 involve procedural questions which arose in contempt proceedings, and will be

considered together. The substantive evidence indicates petitioners acted contemptuously. But substantive guilt does not mean procedural rules may be discarded. If it did, the rules for fair procedure to ascertain guilt would not be needed in the first place.

Petitioner Charles Knox, charged with a traffic violation, was before the Honorable Howard W. Brooks, Judge of the Municipal Court of Des Moines, Iowa. Some of Knox's friends, the other petitioners in these cases, were in the courtroom. Judge Brooks sentenced Knox for the traffic offense. A ruckus occurred and petitioners acted contemptuously. Among other things, Knox spit on Judge Brooks.

Judge Brooks left the courtroom and petitioners were taken at one time or another before the Honorable Ray Harrison, another judge of that court. Petitioners were charged on forms for criminal cases, and the forms followed the language of the statute defining contempt generally. Knox thereupon acted contemptuously before Judge Harrison, calling him a Fascist, but the other petitioners were not contemptuous before that judge.

Judge Harrison summarily found Knox in contempt for the contempt committed before him, and sentenced Knox. Judge Harrison subsequently held hearings on the contempts committed before Judge Brooks involving all the petitioners including Knox. Evidence was presented, petitioners were found to have been in contempt of Judge Brooks, and they were sentenced. Petitioners thereupon sought writs of certiorari, which we granted.

I. In ascertaining proper contempt procedure for a given case, a distinction between two kinds of contempt must be observed, for one kind of contempt may be punished summarily while the other kind requires further steps to be taken. Blackstone refers to these two kinds as "contempts in the face of the court" and "consequential contempts." He says in his Commentaries, 867 (Gavitt Ed. 1941):

If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. But in matters occurring at a distance, of which the court cannot have so perfect a knowledge, except by the confession of the parties, or the testimony of others; if the judges upon affidavit see sufficient ground to suspect that a contempt has been committed, they either make a rule on the party suspected to show cause why an attachment should not issue against him; or in very flagrant cases of contempt, the attachment issues in the first instance; as it also does, if no sufficient cause be shown to discharge, and thereupon the court makes absolute the original rule.

These two kinds of contempt were brought into our law in our first code and have been continued to this day. Code, 1851, § 1608 et seq.; Code, 1971, § 665.1 et seq. The pertinent provisions are:

§ 665.6. Unless the contempt is committed in the immediate view and presence of the court, or comes officially to its knowledge, an affidavit showing the nature of the transaction is necessary as a basis for further action in the premises.

§ 665.7. Before punishing for contempt, unless the offender is already in the presence of the court, he must be served personally with a rule to show cause against the punishment, and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. In either case he may, at his option, make a written explanation of his conduct under oath, which must be filed and preserved.

§ 665.8. Where the action of the court is founded upon evidence given by others, such evidence must be in writing, and be filed and preserved.

§ 665.9. If the court or judge acts upon personal knowledge in the premises, a statement of the facts upon which the order is founded must be entered on the records of the court, or be filed and preserved when the court keeps no record, and shall be a part of the record.

§ 665.10. When the offender is committed, the warrant must state the particular facts and circumstances on which the court acted in the premises, and whether the same was in the knowledge of the court or was proved by witnesses.

The contempt statutes vary among the states. But jurisdictions which have not obliterated the distinction between the two kinds of contempt differentiate the two on the basis of whether the judge has personal knowledge of the contumacy or must hear proof. The former is usually called direct contempt and the latter indirect contempt. The court said this in People v. Howarth, 415 Ill. 499, 508–509, 114 N.E.2d 785, 790:

> Where a direct contempt is committed in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. * * * When the contempt is not an apparent one and its demonstration depends upon the proof of facts of which the court has *no judicial notice*, due process requires a citation in order that defendant may meet and refute the charges. (Italics added.)

The court stated in Provenzale v. Provenzale, 339 Ill.App. 345, 350, 90 N.E.2d 115, 117:

> It has frequently been held by the Supreme Court of this State that where the contempt is within the view of the court and is of such nature as to disturb the orderly processes of court procedure, the contempt is direct and criminal, and the court may proceed summarily without the necessity of taking evidence. The

reason for this rule is obvious in that the court is entitled to rely upon the validity of his own sense perception and requires no extraneous evidence to corroborate such knowledge. But where the court is not in a position to rely upon his own senses as a criteria of truth, but requires the evidence of others, not only for the purpose of determining whether or not disorder has occurred, but whether the conduct causing the disorder was contumacious, then it is the rule that the contempt is indirect.

In Brennan v. State, 242 Ind. 79, 80, 173 N.E.2d 312:

> [T]o constitute a direct criminal contempt, the alleged act must be committed in the presence and knowledge of the court, as distinguished from actions outside the presence of the court or outside the immediate knowledge of the court.

In Ong Hing v. Thurston, 101 Ariz. 92, 100, 416 P.2d 416, 424:

> An important consideration is that respondent did not have personal knowledge that petitioner violated the restraining order since the alleged violation did not take place in his presence. At the hearing, respondent relied upon the testimony of others and documentary evidence in the case file to ascertain if an act of contempt had occurred. * * * It follows that any contempt in this matter was indirect and petitioner was entitled to procedural due process, i. e., notice of the charges against him and an opportunity to be heard.

In Curtis v. Tozer, 374 S.W.2d 557, 568 (Mo.App.):

> A direct contempt is one that occurs in the presence of the court or so near as to interrupt its proceedings. If the judge certified that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court, a direct contempt may be punished summarily.

See also People v. Harrison, 403 Ill. 320, 86 N.E.2d 208; People v. Whitlow, 357 Ill. 34, 191 N.E. 222; McAdams v. Smith, 25 Ill.App.2d 237, 166 N.E.2d 446; People v. Hagopian, 343 Ill.App. 640, 99 N.E.2d 726; LaGrange v. State, 238 Ind. 689, 153 N.E. 2d 593; 17 C.J.S. Contempt § 3 at 8.

Modern commentators distinguish the two kinds of contempt in the same way. This is said in Goldfarb, Contempt Power, 74 (1963):

> It is further suggested that if summary procedures are continually applied to direct contempt cases, these situations should be limited strictly to acts which are direct in a physical, geographical sense, so that courts can act upon information which comes to them through their own sensual perception.

And in Perkins, Criminal Law, 537 (2d Ed. 1969):

> The determinant *insofar as procedure is concerned* is whether the contempt was committed under such circumstances that *the judge has knowledge of all the facts and hence has no need to hear evidence.* (Italics added.)

See also Dangel, Contempt, §§ 447, 449, 461 (1939).

What about the direct-indirect contempt distinction in the multiple-judge court? The answer depends on whether the judges sit together as a court or sit separately with each exercising the powers of the court. E. g., Code, 1971, § 604.37. Applying the test of personal knowledge versus evidentiary establishment, a contempt committed in the presence of judges sitting together as a court constitutes a direct contempt. But a contempt committed in the presence of a judge who sits alone is not a direct contempt of another judge who gets his proof of the contempt from evidence rather than being personally contemned. The distinction is brought out in Ong Hing v. Thurston, 101 Ariz. 92, 98, 416 P.2d 416, 422:

The punitive aspect of the contempt power is addressed to the court as a whole but it is only exercised through individuals. The very nature of any contemptuous act requires, in most instances, jurisdiction to punish for such contempt by the individual judge. While each and all of the judges possess the contempt power as members of the same tribunal, the exercise of such power is singular rather than unanimous. It is a reasonable and practical solution to conclude that *the contempt statutes are directed to the particular judge of the court instead of the broader application of the word.* (Italics added.)

Our statute clearly reflects the personal knowledge—evidentiary establishment dichotomy found in Blackstone, the decisions, and the commentators. Section 665.6 differentiates contempt in the view and presence of the court or officially coming to its knowledge from other contempt. Sections 665.8 and 665.9 supplement each other and were formerly one section. The former requires that the proof of contempt established by "evidence given by others" must be in writing; the latter section requires that if the judge acts on "personal knowledge" the facts must be entered of record. Section 665.10 requires that the warrant of commitment must recite whether the contempt "was in the knowledge of the court or was proved by witnesses." Thus the distinction between the two kinds of contempt is retained.

What about the expression in § 665.6, "or comes officially to its knowledge"? Does this mean a judge who has been the subject of a direct contempt can inform another judge about it and make the contempt a direct one against the second judge? Obviously not. The second judge has no "personal knowledge in the premises." He must rely on evidence. The contempt is indirect as to him. The words, "comes officially to its knowledge," refer to matters of which judicial notice may be taken and of which evidence is not necessary in any case. Cf. People v. Howarth,

415 Ill. 499, 509, 114 N.E.2d 785, 790 (contempt is indirect as to facts of which a judge has no personal knowledge or "judicial notice"). The failure of a witness to appear before a judge in response to his subpoena is an example. Coutts v. District Court in and for Poweshiek County, 149 Iowa 297, 128 N.W. 362.

II. What procedural steps must be taken in the two kinds of contempt?

The procedure in direct contempt is summary. (a) The judge, who already knows of the contempt from personal knowledge or judicial notice, simply holds the offender in contempt without a rule to show cause. State v. District Court of Taylor County, 124 Iowa 187, 99 N.W. 712. If the offender has departed or is otherwise absent, such as a witness who does not appear, the judge may have him brought in so that he can be held in contempt. (b) Then, however, the judge must give the offender an opportunity to make written explanation under oath of his conduct. § 665.7; Watson v. Charlton, 243 Iowa 80, 50 N.W.2d 605; Russell v. French, 67 Iowa 102, 24 N.W. 741. (c) The judge exonerates the offender or inflicts punishment. (d) If the offender is punished, the judge must enter a statement of record of the facts constituting the contempt. § 665.9. (e) If the offender is committed, the warrant must recite the facts and circumstances of the contempt and that same were in the judge's knowledge. § 665.10.

The procedure with indirect contempt is more extended. (a) An affidavit must be filed showing the nature of the transaction constituting the contempt. § 665.6. The allegations of the affidavit may be general but the general allegations "should be sufficiently specific to apprise the party charged of the particular action or actions for which it is claimed he should be held in contempt." Stein v. Municipal Court of Sioux City, 242 Iowa 465, 469, 46 N.W.2d 721, 724. (b) The offender must be served with a rule to show cause against the punishment; he may then be allowed a reasonable time for the purpose of showing cause, or be brought before the judge on a given day for that purpose, or be brought before the judge forthwith—and a warrant may issue if necessary. § 665.7. (c) Unless the offender confesses the contempt, evidence of the contempt is then heard, and contrary evidence, if any. The evidence must be in writing and preserved. § 665.8; Lutz v. Aylesworth, 66 Iowa 629, 24 N.W. 245 (reporter's notes and transcript sufficient). (d) The judge holds the offender in contempt or quashes the rule to show cause, in accordance with the evidence. (e) If the judge holds the offender in contempt, the judge must give him an opportunity to make written explanation of his conduct under oath. § 665.7. (f) The judge then exonerates the offender or inflicts punishment. (g) If the offender is committed, the warrant must recite the facts and circumstances of the contempt and state that same were proved by witnesses. § 665.10.

III. What kinds of contempt are involved here?

Judge Harrison disposed of all of the contempts; Judge Brooks disposed of none of them.

The contempts committed before Judge Brooks were indirect as to Judge Harrison. Testimony of witnesses was necessary to establish those contempts.

The contempt committed before Judge Harrison was a direct contempt as to him.

IV. Were the required procedural steps taken?

*Contempts. Committed before Judge Brooks.* No necessity exists for this court to consider more than the first step as to the contempts committed before Judge Brooks. Since those contempts were indirect as to Judge Harrison, affidavits "showing the nature of the transaction" were necessary. § 665.6. While the affidavits could be general, as already seen "These general allegations should be sufficiently specific to apprise the party

charged of the particular action * * *." Stein v. Municipal Court of Sioux City, 242 Iowa 465, 469, 46 N.W.2d 721, 724. The affidavits here, if they were affidavits, were on criminal forms which gave no information as to the conduct charged to be contemptuous. The forms merely stated the offenders used contemptuous and insolent behavior toward Judge Brooks, in the language of § 665.2(1). The forms followed the general definition of contempt in the statute, without stating how the contempts as thus defined were committed. The claimed affidavits were insufficient.

The writs should thus be sustained as to all the contempts committed before Judge Brooks.

*Contempt before Judge Harrison.* The contempt committed by Knox before Judge Harrison was direct as to that judge and, in proceedings before that judge, could be disposed of summarily. The first step would be to hold the offender in contempt, and the second step would be to give the offender an opportunity to make written explanation. No necessity exists for this court to consider more than the second step.

This step in contempt proceedings (whether direct or indirect) is a separate step from a contemnee's attempt to show he is not in contempt. Especially in indirect contempt proceedings, the contemnee commonly introduces evidence to show that in fact he has not been contemptuous. But if he is unsuccessful and the judge finds him in contempt and comes to the subject of punishment, then the step under consideration is reached—the contemnee's right to make "explanation of his conduct under oath". Code, 1971, § 665.7; Russell v. French, 67 Iowa 102, 24 N.W. 741.

When Knox was brought before Judge Harrison on the contempts before Judge Brooks, this occurred:

Mr. King: It if please the Court, your Honor, I would ask that this matter be set down for immediate hearing so that we may dispose of it at this time.

The Court: Well, I would be for that except that I think we should give Mr. Knox the opportunity to have a hearing.

Defendant: (Laughter.)

The Court: And if there are any more outbursts from you, I will find you in contempt right now.

Defendant: Go ahead, who cares, Fascist.

The Court: Let the record show that Mr. Knox has referred to this Court as Fascist and it is the judgment of the Court that he now be confined for a period of six months in the County Jail and that he be fined $500 in addition thereto.

Now, Mr. Knox, do you want to enter your plea on this contempt of court, this other one?

Defendant: I enter no plea—I enter no plea and it is good to be sentenced by you, Fascist.

The Court: I will enter a plea of not guilty and set your trial.

The holding of the offender in (direct) contempt and the infliction of punishment came in one sentence. See Russell v. French, 67 Iowa 102, 105, 24 N.W. 741, 743 ("The court adjudged the defendant and inflicted punishment, so to speak, in the same breath."). The judge could rightly hold the offender in contempt, since the contempt occurred before the judge, but the offender was given no opportunity under § 665.7 to make a written statement before punishment.

Did the offender waive his right to be given the opportunity to make a statement? The trial court threatened contempt and the offender responded, "Go ahead, who cares, Fascist." Under earlier cases this might be held to permit a court to hold an offender in contempt and also to proceed to inflict punishment, without

giving the offender a chance to make a statement before punishment. Hardin v. Silvari, 114 Iowa 157, 86 N.W. 223; see also Coyle v. Sawyer, 198 Iowa 1022, 200 N.W. 721. Since those cases were decided, however, this court has spoken out unmistakably on the duty of a court to grant an offender the chance to make an explanation. Watson v. Charlton, 243 Iowa 80, 89, 50 N.W.2d 605, 610. There the contention was that the offender waived the right by having flatly and definitely stated she would not comply with a requirement of the district judge. Notwithstanding, this court held the district judge had the duty to give the offender the opportunity to make her statement before punishment was inflicted. Judge Thompson laid down that duty as an invariable requirement, in these terms:

> The general principle which evolves from a study of the statute and the cases interpreting and applying it is clear. The right to make a written explanation or excuse is expressly granted, and *no conviction should be had until reasonable opportunity has been given to the alleged contemnor to exercise it.* The common law was to the contrary; and it is the manifest intent of the statute, which has existed in Iowa in substantially its present form almost since the formation of the state, to change the rule in order to avoid the harsh results formerly attendant upon summary proceedings in these matters. Code Section 665.7, under its various numbers, has been consistently interpreted by this court in the past to give the accused a real and substantial right. (Italics added.)

The wisdom of Judge Thompson's pronouncement is evident here. This offender had just misbehaved before Judge Brooks. When he was soon brought before Judge Harrison, the atmosphere was undoubtedly charged. He called Judge Harrison a Fascist, and in one sentence was held in contempt and was also meted out very severe punishment, the maximum the law allows —six months in jail and a fine of $500.

The purpose of the statutory right to explain is primarily to give the offender a chance to communicate his side of the controversy—a right he did not have at common law. But the right has two additional beneficial effects. In actual practice, if an offender is given an opportunity to explain, not infrequently he will cool down, see the folly of his course, and become more tractable—especially if he counsels with wiser heads. Too, the judge has the opportunity to become more composed and objective, resulting in less likelihood of excessive punishment.

Knox was not accorded the statutory right of explanation as to the contempt before Judge Harrison, and the writ should be sustained as to that contempt.

V. What disposition should we make of the cases? These obstreperous individuals should not be absolved. The cases should be returned to the municipal court for contempt proceedings which comport with procedural requirements. The certiorari rule permits such disposition. Rule 316, Rules of Civil Procedure ("prescribing the manner in which either party may proceed further").

Now, however, this situation exists. The traffic and contempt proceedings were concluded. Consequently those proceedings will not be interrupted if the contempts, on remand, are referred to a judge before whom no contempts occurred. See Mayberry v. Pennsylvania, 400 U.S. 455, 91 S. Ct. 499, 27 L.Ed.2d 532.

Clearly the contempt committed before Judge Harrison should be referred to a third judge. Judge Harrison could continue hearing the contempts committed before Judge Brooks. But since a contempt was committed before Judge Harrison also, all of the cases ought to be referred to a third judge. If the offenders persevere in their misconduct in court, they will expose themselves to direct contempt proceedings before the third judge.

Finally, the contempt power is unique, especially the direct contempt power, be-

cause the judge charges, judges, and punishes. Boisterous and unruly individuals in court sorely try the patience of the kindest judge. But the extraordinary power contempt gives a judge demands that the procedural requirements be duly observed to the end that the offenders, although they do not relish the punishment inflicted, can have no complaint about the manner they came by it.

All the writs should be sustained and the cases should be remanded for further proceedings.

RAWLINGS and BECKER, JJ., join in this dissent.